THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE JOHN KRISTOVICH, Defendant-Appellant.

(No. 75-32;

Second District (2nd Division)—October 28, 1975.

Julius Lucius Echeles, of Chicago, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (Edward N. Morris and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

Defendant was convicted of burglary, after a jury trial, and sentenced to 1 to 3 years in the penitentiary. On appeal he presents these issues: (1) whether the reference in the prosecutor's opening statement to defendant's having been under surveillance on the day of his arrest, and the admission of testimony by two agents of the Illinois Bureau of Investigation ("IBI") that they were "assigned to the organized crime section", deprived defendant of his constitutional right to a fair trial; (2) whether defendant was irreparably prejudiced by the admission of evidence of his involvement in a similar offense (other than that for which he was indicted); and (3) whether the physical evidence was improperly and prejudicially admitted over defense objections without having the chain of possession sufficiently established.

The indictment charged that defendant committed the offense of burglary on December 11, 1973, by entering a 1973 two-door Lincoln Continental Mark IV motor vehicle ("Lincoln") owned by Marlene L. Yohe, with the intent therein to commit a theft. In his opening statement the prosecutor stated that he expected to show that on that date IBI agents operated what is known as a "moving surveillance" of the accused commencing at 9:30 a.m. Defense counsel objected and moved for a mistrial. After argument in chambers the trial court admonished the prosecutor but denied the motion.

Mrs. Yohe, the owner of the Lincoln, testified that on December 11 she had stopped at a dry cleaning shop and picked up her husband's suit, her daughter's sweater and her own slacks and gold dress. She hung all of these articles on the hook behind the driver's seat. She later drove the car to Toppers' Restaurant, parked in the restaurant lot and went into the restaurant. While she was there a man who identified himself as an IBI special agent took her outside. They went to her car and she saw that the passenger window was broken out and that the clothing was missing. She also identified the articles of clothing (People's Exhibit 5) taken from her car.

Roger Shiels, when asked his profession, testified that he was a special agent for the IBI "assigned to the organized crime section." He arrived at Rickett's Restaurant at about 5:55 p.m. on December 11. There he observed defendant step out of his car, walk into Rickett's parking lot, look into a 1969 Thunderbird parked there, first manipulating a device at the passenger window, then later smashing and breaking the window with his hand. Shiels saw him remove therefrom a grey suit in a clear plastic bag and a brief case, and then kick the car door shut and walk toward his own car. Shiels looked for Agent Tetyk, whom he had met earlier at the parking lot, but then saw Tetyk's car following immediately behind defendant's car. After a radio conversation with Tetyk, Shiels went into the restaurant and located the owner of the Thunderbird, one William Hoskins. The defendant was not arrested at this time but surveillance was continued.

Agent Tetyk testified that he was a special agent for the IBI, and on December 11, 1973, was assigned to its organized crime section. At this point, in chambers, defendant's counsel moved for a mistrial on the grounds that bringing out Tetyk's assignment would prejudice and inflame the jury. The court denied the motion. Resuming his testimony, Agent Tetyk stated that on that date he was at Rickett's Restaurant at about 5:55 p.m. and observed the defendant use a forward and backward motion with his arm at the passenger side of a 1969 Thunderbird. Tetyk next saw him leave the car carrying clothing in a clear plastic bag.

He then followed defendant's car to Toppers' Restaurant. At Toppers' defendant parked, left his car, and looked into several cars already parked there. At the passenger side of a Lincoln Tetyk testified he saw the defendant making forward and backward motions with a thin metal object, and saw the defendant smash the passenger side window. Defendant then opened the door, entered the Lincoln, and exited carrying several clear plastic clothing bags. Tetyk and Sergeants Fieroh and Schwalje arrested defendant as he was about to enter his car. Tetyk identified the thin object, an extended, bent coat hanger (People's Exhibit 8), which he testified defendant was carrying in his hand, a screw driver (People's Exhibit 9) which was in defendant's possession, and the clothing (People's Exhibit 5) which was draped over defendant's left hand at the time of his arrest.

Agent Schwalje testified that he and his partner, Fieroh, were in the area of Rickett's Restaurant and he observed defendant in the vicinity of a black Thunderbird in the restaurant parking lot. Later, after he and his partner drove to Toppers' Restaurant, he saw defendant near a silver Lincoln car. He then saw defendant running toward his (defendant's) car with clothing draped on one arm and a screw driver and an extended and bent coat hanger in his left hand. Defendant was arrested as he was about to enter his car. Schwalje identified an extended and bent coat hanger (People's Exhibit 8) with his mark on the tag, and the screw driver (Exhibit 9) on which he put his initials the next day.

Special Agent Fieroh testified that he was in a squad car with Schwalje on December 11, northbound past Rickett's Restaurant; that he saw defendant next to a dark Thunderbird leaning over the passenger side door with a large screw driver protruding from his back pocket. Shortly thereafter, in the Toppers' area, he saw defendant standing next to the passenger door of another car. He further corroborated the testimony of Agent Schwalje up to the time of defendant's arrest and described defendant at that time with the clothing over his left arm and the bent coat hanger and screw driver in his left hand. Fieroh took those items at the time of the arrest and they remained in his custody until the following day when he labeled and initialed them and deposited them in "our vault" which had a combination lock for safekeeping. He then testified in some detail concerning the custody of the items but no purpose will be served by summarizing it in this opinion.

William Hoskins testified, over defense objection, to his ownership of the Thunderbird car. He further testified that when he parked the car at Rickett's Restaurant the windows were intact and when he left there the right window was broken and two brief cases and a suit on a hanger had been removed.

The trial court admitted People Exhibits 5, 8, and 9 into evidence over defense objections that the chain of custody had not been properly established. At the close of the State's case defense motions for a directed verdict and renewed motion for a mistrial were denied.

Defendant testified in his own defense that at about 6 p.m. on December 11, 1973, he drove to Rickett's Restaurant but finding no parking space there drove on to Toppers'. There he parked "parallel to the parking lot" and left his car to enter the restaurant. "[I]n between several automobiles," he noticed clothes on a hanger in a plastic bag, picked them up, and after he took "eight or ten steps" toward the restaurant he was arrested by two armed men, one of whom stated he was a police officer. Defendant testified he dropped the clothing, that he had nothing in his possession other than those items, and that no other items were removed by the police from his possession. On cross-examination he stated he never got out of his car at Rickett's Restaurant because there was no parking space open.

The jury found defendant guilty of burglary and after hearing in aggravation and mitigation defendant was sentenced to a term of 1 to 3 years.

Defendant contends that his conviction should be reversed and remanded because the jury was improperly advised in the prosecutor's opening statement that defendant was under "surveillance" and by testimony of two IBI agents, that they were assigned to the "organized crime section." We do not agree.

■■ Opening statements are not grounds for reversal unless it appears that they influenced the jury in a manner resulting in substantial prejudice to the defendant. (*People v. Vasquez*, 118 Ill.App.2d 66.) The testimony of the IBI agents confirmed in effect that defendant was under a "moving surveillance" by them prior to his arrest. Thus, the jury was not misled by the opening statement nor was the defendant prejudiced by it. Indeed, the jury was told by the prosecutor at the beginning of his opening statement that "What I say is not evidence in the cause."

In view of the overwhelming evidence of defendant's guilt the jury could arrive at no other than a guilty verdict. Therefore, even if it could be said that the challenged reference in the opening statement was error, it was harmless beyond all doubt. (See *People v. Grames*, 16 Ill.App.3d 1075, and *People v. Berry*, 18 Ill.2d 453, 460.) The trial court properly denied defendant's motion for a mistrial.

The statement of Agent Shiels as to his assignment to the IBI's organized crime section was volunteered when he was asked his profession. Agent Tetyk's statement to the same effect was elicited from him by the prosecutor. In either case these statements were mere identifications of

the particular unit to which they were assigned. Neither of the agents testified to any matters which would imply or suggest that defendant was involved in organized crime or that he had a prior criminal record. Therefore, the case cited by defendant are inapposite. The court did not err in denying defendant's motion for a mistrial.

In *People v. Bradley*, 3 Ill.App.3d 101, which involved a prosecution for unlawful possession of heroin where the prosecutor asked the arresting officer his assignment on the day of the offense, the officer answered that he was patrolling in areas known to be frequented by narcotic addicts and peddlers. The court there held that this was proper and even if error it would have been harmless. Similarly, in the case at bar we find no error in the officers' statements of their assignment to the organized crime section. Moreover, in view of the overwhelming evidence of defendant's guilt we hold that any error in the admission of such testimony was harmless and does not require reversal. See *People v. Davis*, 46 Ill. 2d 554; *People v. Nicholls*, 42 Ill.2d 91.

■■ Defendant next argues that he was irreparably prejudiced by the admission of testimony tending to show his involvement in a similar offense (other than the one for which he was indicted) by breaking the passenger window of a Thunderbird car and removing property therefrom. Two police officers testified as to those actions of the defendant and the owner of the Thunderbird was permitted to testify over defendant's objection to the fact that while Hoskins was in Rickett's Restaurant his car window had been broken and certain items had been removed from the car.

The evidence of the burglary of the Thunderbird established a common scheme or design and identity.[1] It tends to confirm a common scheme to break into various cars and then burglarize them. It also negatives the defendant's claim that the clothes in his possession (People's Exhibit 5) were found by him in Toppers' parking lot as he testified. See *People v.*

---

[1] Moreover, the trial court instructed the jury, pursuant to People's instruction 9, as follows:

"Evidence has been received that the defendant has been involved in a crime other than that charged in the indictment. This evidence has been received solely on the issue of the defendant's identification, intent, and design. This evidence is to be considered by you only for the limited purpose for which it was received."

In the conference on instructions defense counsel made the following statement with reference to that instruction:

"There is no doubt in my mind it's a proper statement of the law. My objection to this is that the other crime was not only shown, but was proved beyond—just looking at it coldly—I would say there was an attempt to prove it beyond all reasonable doubt. I think they went beyond the Armstrong case, and I'm objecting to it on that point."

*Sanchez,* 11 Ill.App.3d 1079, 1082; *People v. Allen,* 1 Ill.App.3d 197, 201; and *People v. Tranowski,* 20 Ill.2d 11, 16.

■■ Moreover, in view of the overwhelming evidence of defendant's guilt, even if the testimony were erroneously admitted, it would not call for reversal. In *People v. Allen,* 1 Ill.App.3d 197, where a similar situation was presented, we said:

> "When the competent evidence shows beyond all reasonable doubt that a defendant is guilty * * * an error in the admission of evidence of other offenses does not call for reversal, when—as here—the jury could not have reasonably found the defendant not guilty." 1 Ill.App.3d 197, 202.

■■ Finally, defendant contends that the physical evidence (People's Exhibits 5, 8 and 9) was improperly and prejudicially admitted over defendant's objection, without having the chain of possession sufficiently established.

Foundation for the introduction of an object may be laid either through its identification by a witness or through establishment of a chain of possession. (*People v. Greer,* 28 Ill.2d 107.) Both identification and establishment of a chain of possession are not, however, required because to do so would impose an unnecessary burden, and would not assure a fairer trial of the accused. *People v. Patterson,* 2 Ill.App.3d 902; *People v. Judkins,* 10 Ill.2d 445.

In the case at bar each of those exhibits (the clothing in the plastic bag, the extended, bent coat hanger and the screw driver) were positively and expressly identified by at least one witness. Mrs. Yohe identified the clothing as her own and that of her husband and daughter, which she had picked up at the dry cleaners. Agent Fieroh, who took the clothing from defendant, testified that it was in his custody and possession until he brought it to court. There is not the slightest suggestion in the record of any substitution, alteration or other tampering with the physical evidence. (*People v. Richards,* 120 Ill.App.2d 313, 339; *People v. Fane,* 24 Ill.App.3d 994.) The physical evidence was therefore properly admitted.

We therefore affirm the judgment of the circuit court of Lake County.

Judgment affirmed.

T. MORAN and DIXON, JJ., concur.