THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT N. TYSON, Defendant-Appellant.

Second District    No. 2—84—1004

Opinion filed November 4, 1985.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, and Paul T. Wigoda, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

The defendant, Robert N. Tyson, was charged by information with residential burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—3) and three counts of felony theft (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(d)(1)). At the close of the State's case before a jury in the circuit court of Lake County, the court granted the defendant's motion for a directed verdict as to counts II and III of the felony theft charges. Defendant's motion was denied as to the remaining theft count and the residential burglary charge. Subsequently, the defendant was found not guilty of residential burglary, but guilty of felony theft, and was sentenced to two years in the Department of Corrections.

The defendant now appeals and raises the following contentions in this court: (1) that the evidence failed to establish defendant's guilt beyond a reasonable doubt; (2) that the defendant received ineffective assistance of counsel when defense counsel, erroneously believing that the defendant could be impeached by a prior theft conviction, did not call the defendant to testify; and, (3) that the prosecutor's improper remarks during opening and closing arguments, calculated to bolster the credibility of certain witnesses and inferring defendant had a burden to present a theory of innocence, constituted reversible error.

The evidence presented at trial and pertinent to this review is as follows: Raymond J. Flegal testified that on July 31, 1984, at approximately 10:30 p.m., he returned home with his family to find his back patio door open and several belongings missing, including a 21-inch Sony television, a video cassette recorder, a stereo turntable, a cassette deck, several video tapes, a set of car speakers, three jewelry boxes, and a jugful of coins. He immediately notified the Zion police.

Officer Cindy Markobrad of the Zion police testified that she, along with Officers Lowery and Bridges, arrived at the Flegal home at approximately 10:45 p.m. While the other officers checked the inside of the home, Markobrad investigated the immediate area outside the house. As she was surveying the property she happened to notice

a large, dark-colored automobile stopped at a traffic light on Lewis Avenue, a busy four-lane highway about 150 yards from the Flegal property. She stated that she had a clear view of the car since the area between the Flegals' and Lewis Avenue was an open field with only one large tree in the vicinity. She was suspicious of the vehicle since it appeared to be stopped for no apparent reason. She then watched as the car started up again and proceeded northbound on Lewis Avenue. She noted that, as it took off, it had an extremely loud muffler. She radioed another officer to report the suspicious vehicle. Within minutes, Officer Ower, positioned in a squad car near the scene, followed the vehicle and pulled it over on a traffic stop.

At trial Officer Ower testified that when he stopped the vehicle, the driver got out of the car and walked back towards him. He gave his name as Robert Tyson. Ower testified that as he was standing near the defendant's automobile, he observed a passenger in the front seat and another passenger in the back seat, whom he recognized as Mark Downey. Downey got out of the car and stood near the defendant as he talked to Ower. The officer than looked into the car's rear window and observed several items stacked up in the back seat of the car. Specifically he noticed a television, a stereo turntable and a plastic bag containing various articles. He next told Tyson and Downey to place their hands on the hood of the car, but while frisking the defendant, Downey and the other passenger took off running from the scene. Officer Ower then arrested the defendant for driving without a license, driving with a loud muffler and for suspicion of burglary. Raymond Flegal later identified the items in the car as property removed from his house. Some of his belongings, including a video cassette recorder, a 12-inch television, and a cassette recorder, were never recovered.

Ower testified that after transporting the defendant to the Zion police station, the defendant gave the following statement. He identified the two other men in his car as Mark Downey and Ferrell Bond. He said that about 10:30 p.m., while he was driving down Lewis Avenue on his way home from visiting friends in Waukegan, he saw Ferrell Bond standing at the side of the road, holding a plastic bag and flagging him down. He said he stopped and Bond asked for a ride. As Bond was getting into the car, Mark Downey came running up towards the car, carrying a television set. Downey got into the car and told him to drive north on Lewis Avenue. Later, when they turned east on 23rd Street, they were pulled over by the squad car. When asked about the other items in the car, the defendant said he only knew about the plastic bag and the television set. He also said that

once they started driving, he began to suspect from Bond's and Downey's conversation that the television was probably stolen.

Officer Hampton, another Zion police officer, gave a similar version of the defendant's statement. However, he also indicated that the defendant told him Downey "came out of the bushes" with the television set, that he just "wanted to hurry up" and get Downey and Bond out of his car and that he was taking them to the "Jets" housing project to get rid of the stuff. Officer Hampton also testified that he lifted a number of fingerprints from the scene of the break-in at the Flegals. Anthony Spadafora, a forensic scientist, testified that four of the lifted fingerprints matched those of Ferrell Bond. However, none of the latent fingerprints matched those of the defendant.

Officer Lowery testified that he and Officer Ransom removed the material that was in the back seat of the defendant's car immediately after it was towed to the Zion police station. The recovered property included a television, a turntable, several jewelry boxes, a clock radio, two remote control devices, stereo speakers, and a garbage bag and pillow case full of equipment and miscellaneous items. It took both Lowery and Ransom to carry the television from the vehicle to the evidence locker.

Prior to the commencement of trial, defense counsel moved *in limine* to prohibit the State's use, for impeachment purposes, of an alleged theft conviction entered against defendant in 1981. Counsel argued that in light of the fact that the defendant was being tried on three counts of felony theft, introduction of the prior conviction would be far more prejudicial than probative of his credibility. The court denied the motion, ruling that despite the prejudicial effect of the conviction, it showed "moral turpitude" and therefore went to the credibility of the defendant. See *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.

Later, after completion of the State's case, the defendant moved for a directed verdict of not guilty on all charges. The court denied the motion for directed verdict on the residential burglary count, but granted the motion on counts II and III of the felony theft charges. Count II alleged that the defendant knowingly obtained control over certain stolen property of Raymond Flegal, knowing that the property had been stolen by Ferrell Bond and Mark Downey. Count III alleged that the defendant knowingly obtained control over certain stolen property of Raymond Flegal under such circumstances as would reasonably induce said defendant to believe the property was stolen. Count IV, alleging that the defendant knowingly exerted unauthorized control over property of Raymond Flegal, was allowed to stand. The

defendant did not testify, and the defense rested without presenting any evidence.

Subsequently, the jury found the defendant not guilty of residential burglary but guilty of one count of felony theft. At the sentencing hearing, defendant presented his post-trial motion for a new trial. At that time it was discovered that the defendant's presentence report contained no record of a 1981 theft conviction. The report only indicated an arrest for theft in 1983 for which the defendant received one year of court supervision and 50 hours of public service employment. Defense counsel acknowledged that his understanding of defendant's record was "apparently an error." Nevertheless, the court denied the defendant's post-trial motion and entered judgment on the guilty verdict. This appeal followed.

The defendant's first contention is that the State failed to establish his guilt beyond a reasonable doubt. He asserts that the State's case was based wholly on circumstantial evidence, and that the jury's verdict was both speculative and inconsistent with the defendant's theory of innocence as presented in his post-arrest statements. He therefore asked this court to reverse his conviction.

■ Where a conviction is based entirely on circumstantial evidence, the facts proved must be consistent with the defendant's guilt and inconsistent with any reasonable hypothesis of innocence. (*People v. Branion* (1970), 47 Ill. 2d 70, 77, 265 N.E.2d 1; *People v. Giangrande* (1981), 101 Ill. App. 3d 397, 400, 428 N.E.2d 503.) If the proof is entirely circumstantial and there is a reasonable hypothesis arising from the evidence which is consistent with the innocence of the defendant, then that hypothesis must be adopted. (*People v. Wilson* (1948), 400 Ill. 461, 473, 81 N.E.2d 211; see *People v. Grice* (1980), 87 Ill. App. 3d 718, 725, 410 N.E.2d 209.) However, guilt need not be established beyond any possibility of a doubt. (*People v. Williams* (1977), 66 Ill. 2d 478, 485, 363 N.E.2d 801; *People v. Branion* (1970), 47 Ill. 2d 70, 77, 265 N.E.2d 1.) A jury is "not required to search out a series of potential explanations compatible with innocence, and elevate them to the status of reasonable doubt." *People v. Russell* (1959), 17 Ill. 2d 328, 331, 161 N.E.2d 309.

■ To sustain a conviction for theft, the State must prove beyond a reasonable doubt that the property was in fact stolen and that the defendant knowingly exerted control over the stolen property intending to deprive the owner of its use. (*People v. Thompson* (1975), 35 Ill. App. 3d 105, 340 N.E.2d 631; *People v. Kostatinovich* (1981), 98 Ill. App. 3d 611, 614, 424 N.E.2d 864.) The presumption that the possessor of recently stolen property is the thief is an inference which the

jury may be permitted to draw, based on human experience and common sense, from known events or circumstances. (*People v. Barber* (1974), 20 Ill. App. 3d 977, 979, 313 N.E.2d 491; *People v. Fiorito* (1952), 413 Ill. 123, 128-29, 108 N.E.2d 455.) If circumstances show that a defendant possessed recently stolen property either singly or jointly with others, the inference of guilt is warranted and exclusiveness of possession is not rebutted by merely showing another's presence. *People v. Reynolds* (1963), 27 Ill. 2d 523, 526, 190 N.E.2d 301; *People v. Barber* (1974), 20 Ill. App. 3d 977, 980, 313 N.E.2d 491.

The evidence shows that within minutes of Raymond Flegal's report of a break-in, a police officer observed the defendant's vehicle stopped on a highway less than 200 yards from the burglarized home. The officer saw no one get in or out and the car appeared to be stopped for no apparent reason. The officer reported the suspicious vehicle and a short time later another officer pulled the car over on a traffic violation. While questioning the defendant, the officer observed a number of articles, including a television set, stereo speakers and a stuffed plastic bag, stacked in the rear seat of the automobile in plain view. These items were later identified as property belonging to Raymond Flegal.

According to the defendant's post-arrest statements, he was driving down Lewis Avenue (the highway where his vehicle was spotted), at about 10:30 p.m. on the night in question, after visiting friends in Waukegan. As he was driving, he saw a friend, Ferrell Bond, standing along the road, holding a plastic bag and waving him down. He stopped and Bond asked for a ride. Mark Downey then came running up, carrying a television set. They then drove down Lewis Avenue to 23rd Street where they were stopped by a squad car. The defendant said he began to suspect the television set was stolen by listening to his friends' conversations, but that he knew nothing about the burglary. However, the record shows that he never informed the police of his suspicions until after his arrest.

■ Here, the jury chose not to believe the defendant's story. From the amount of stolen property removed from the car, and the fact that it took two policemen to remove the 21-inch Sony television, we think the jury could reasonably infer that it was unlikely that Downey ran up to the defendant's car carrying the television, and that bond was standing by the road with only a plastic bag. It is within the province of a jury to decide the credibility of the witnesses, to weigh their testimony and to draw inferences therefrom and a verdict will not be reversed unless the evidence is so unsatisfactory as to leave reasonable doubt of the defendant's guilt. (*People v. Woods*

(1963), 26 Ill. 2d 557, 562, 188 N.E.2d 1; *People v. Willis* (1970), 126 Ill. App. 2d 348, 261 N.E.2d 723.) To prove guilt beyond a reasonable doubt does not mean that a jury must disregard the inferences that flow normally from the evidence. (*People v. Minish* (1974), 19 Ill. App. 3d 603, 606, 312 N.E.2d 49.) Consequently, we think the evidence was sufficient to prove defendant guilty beyond a reasonable doubt.

The defendant also argues that he received ineffective assistance of counsel by defense counsel's failure to ascertain whether the defendant actually risked impeachment by a prior theft conviction. He contends that defense counsel's error materially affected, if not determined, the defendant's decision not to testify and that because the State's evidence was purely circumstantial, this decision affected the outcome of the trial. He further asserts that had he been allowed to testify, his exculpatory accounting for the presence of the stolen articles in his car as well as his demeanor to the jury might well have rebutted the incriminatory inference that he participated in the theft.

■ The general rule regarding impeachment of witnesses with evidence of their prior criminal conduct is that only convictions of crimes punishable by sentences of more than one year or involving dishonesty or false statements may be admitted, and these only if the trial court determines that their probative value outweighs their potential for causing unfair prejudice. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 516, 268 N.E.2d 695, 698-99.) However, evidence of an arrest which has not resulted in a conviction, cannot be used to impeach a defendant. (*People v. Norwood* (1973), 54 Ill. 2d 253, 296 N.E.2d 852; *People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835.) An order of supervision is not a conviction, but "more in keeping with a continuance, pending the defendant's good conduct, with potential dismissal of the charges [citation] upon acceptable compliance." (*People v. Roper* (1983), 116 Ill. App. 3d 821, 824, 452 N.E.2d 748; *People v. Tarkowski* (1981), 100 Ill. App. 3d 153, 426 N.E.2d 631.) Accordingly, the defendant's credibility could not have been impeached by evidence of this prior arrest had he testified at trial.

■ The Illinois Supreme Court has recently adopted the standards set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, concerning the effectiveness of counsel requirement of the sixth amendment to the United States Constitution. (U.S. Const., amend. VI; *People v. Albanese* (1984), 104 Ill. 2d 504, 526, 473 N.E.2d 1246; *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005.) The court in *Strickland* articulated "reasonably effective assistance" as the correct standard and held that in order to establish ineffectiveness

a defendant must show (1) that his counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2065.) It is not enough to show that counsel's errors had some conceivable effect on the outcome of the trial. (*People v. Barnard* (1984), 104 Ill. 2d 218, 237, 470 N.E.2d 1005.) On the other hand, a defendant need not show that counsel's deficient performance more likely than not altered the outcome of the case. (104 Ill. 2d 218, 237, 470 N.E.2d 1005.) To show ineffective assistance of counsel, defendant must establish that there is a reasonable probability that but for counsel's error the result of the proceedings would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068; *People v. Royse* (1983), 99 Ill. 2d 163, 168, 457 N.E.2d 1217.

■ Here, the record establishes that the attorney failed to accurately determine defendant's criminal record before moving for a motion *in limine.* When the motion was denied, the defendant was, in effect, deprived of his right to testify, out of the mistaken belief that he could be impeached by a prior theft conviction. The decision of whether an accused will testify in his own behalf is crucial. Here, however, the jury received his post-arrest statements giving his version of the events. Viewing the defendant's version and the other evidence, we cannot say that but for counsel's error the result of the proceedings would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068; *People v. Royse* (1983), 99 Ill. 2d 163, 168, 457 N.E.2d 1217.) Nor can we say that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington* (1984), 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692-93, 104 S. Ct. 2052, 2064.

As we reverse and remand for reasons that follow, this error should not recur on retrial.

We are of the opinion that reversible error occurred when the prosecutor made the following remarks to the jury during closing arguments:

"First of all, you have to have been presented in this case with a theory of innocence. * * *

I submit to you ladies and gentlemen, that you were not presented with a theory. You're not presented with a theory of innocence, and above all, if you were presented with something, that's not reasonable * * *."

Defense counsel objected and in a sidebar moved for a mistrial, which motion was denied. The court then, however, admonished the prosecutor to "get off [the] argument immediately." However, the court made no further comment to the jury.

■■ It is a fundamental principle of jurisprudence that the law presumes the innocence of an accused until he is proved guilty beyond a reasonable doubt. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 470, 220 N.E.2d 432.) Equally basic is the rule of law that the prosecutor has the burden of proving beyond a reasonable doubt all the material and essential facts constituting the crime. (35 Ill. 2d 467, 470, 220 N.E.2d 432; *People v. Benson* (1960), 19 Ill. 2d 50, 166 N.E.2d 80.) The burden of such proof never shifts to the accused, but remains the responsibility of the prosecutor throughout the trial. *People v. Weinstein* (1966), 35 Ill. 2d 467, 470, 220 N.E.2d 432; *People v. Sanders* (1934), 357 Ill. 610.

We believe that the prosecutor made a serious error in implying that the defendant had to provide a theory of innocence. While it has been held that a prosecutor may comment on the uncontradicted nature of the State's case even where the person who could have contradicted the State's evidence was the defendant himself (*People v. Skorusa* (1973), 55 Ill. 2d 577, 584, 304 N.E.2d 630; *People v. Curtis* (1977), 48 Ill. App. 3d 375, 387, 362 N.E.2d 1319), here the prosecutor went beyond such an argument. He insinuated that the defendant had a burden to present evidence to support his innocence. Moreover, the court, while in effect sustaining the objection, failed to admonish the jury to disregard the comment. This was error. See also *People v. Giangrande* (1981), 101 Ill. App. 3d 397, 428 N.E.2d 503.

Further, we do not believe that because the objection was sustained and because proper jury instructions were given as to the burden of proof, that error in this case was avoided. In *People v. Weinstein* (1966), 35 Ill. 2d 467, 470, 220 N.E.2d 432, a prosecutor made repeated assertions to a jury that defendant had the burden of introducing evidence to create a reasonable doubt of her guilt before she could be acquitted. Objections were repeatedly made and sustained and during closing arguments and in a jury instruction the jury was properly advised of the burden of proof. (35 Ill. 2d 467, 470, 220 N.E.2d 432.) Nevertheless, the court found manifest error. It observed:

"In light of the constant repetition of the erroneous premise that defendant had the burden of introducing evidence to create a reasonable doubt of her guilt, we cannot say that the jury conducted its deliberations free from confusion or was correctly

[*sic*] informed as to the law. We cannot presume, as the appellate court did, that the jury was unaffected by the argument. Doubt as to its harmful effect must be resolved in favor of the defendant." 35 Ill. 2d 467, 471-72, 220 N.E.2d 432.

■ While we recognize that closing arguments are not normally grounds for reversal, where it appears that they influenced the jury in a manner resulting in substantial prejudice to the defendant, error will be found. (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200; *People v. Kristovich* (1975), 32 Ill. App. 3d 979, 336 N.E.2d 772.) Here, because defendant did not testify and the defense failed to present any evidence, we think the jury may well have been influenced by the prosecutor's improper remarks. Consequently, we find that defendant is entitled to a new trial.

For the foregoing reasons, the judgment of the circuit court of Lake County is reversed, and the cause remanded for a new trial.

Reversed and remanded.

NASH, P.J., and LINDBERG, J., concur.