THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID WALKER, Defendant-Appellant.

First District (1st Division) No. 1—90—2068

Opinion filed May 18, 1992.

Michael J. Pelletier and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Gael O'Brien, and Jeanne Libert, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

After a jury trial, defendant David Walker was convicted of first-degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1) and sentenced to 55 years' imprisonment. Defendant appeals his conviction and sentence alleging the following reversible errors: (1) the trial court failed to exercise its discretion in denying the jury's request for transcripts of the trial testimony; (2) the trial court abused its discretion in limiting defendant's cross-examination of a key State's witness; (3) prosecutorial comments during closing argument impermissibly shifted the burden of proof to defendant; (4) the indictment against defendant should have been dismissed for failure to conduct a preliminary hearing where the initial charge was not brought by indictment of a grand jury; and (5) his sentence should be vacated and the cause remanded for resentencing where the trial court improperly considered as aggravating evidence a statement defendant made which was allegedly taken in violation of his *Miranda* rights. We affirm.

Chicago police officer Robert Finn testified that on July 27, 1988, at about 12:35 p.m., he was in the driver's seat of his squad car at the southwest corner of Washington and Pine Streets taking an unrelated battery report from Nina Hodges, who was seated in the rear seat. Chicago police officer Timothy Lynn was seated in the passenger seat. Finn observed a van approaching in his rear or side view mirror. As the van came adjacent to the squad car, he heard the sound of three or four gunshots. Finn saw only a driver but could not make him out clearly. Finn put the vehicle in gear and followed the van from a distance of one or two car lengths. There was no other traffic and Finn could see both sides of the van as he followed it. The van's rear windows were dirty. The van was travelling 20 to 25 miles per hour and it may have increased its speed 5 or 10 miles per hour when it passed the squad car.

After following the van about one-half block, the van attempted to turn right into an alley, but it "sideswiped" a parked car, struck

a fence, and came to rest against a building. Finn could see the driver's door at the point the van struck the building. After the van came to rest, Finn parked his vehicle at a right angle about eight feet behind the van. Finn observed no one in the alley next to where the van came to a halt. The area was well lit.

Finn crossed the front of his car and approached the passenger side of the van while Officer Lynn went to the driver's side. He could see the driver's door when he exited his vehicle and did not see it open. Finn observed defendant sitting in the driver's seat; he saw no one else in the van. Defendant was then removed from the van. No more than one minute had elapsed between the time the van passed the squad car and defendant's arrest.

Finn conducted a protective search of the van. Finn smelled gunpowder and observed the lifeless body of a person behind the driver's seat. The body was partially on the floor and partially on a bench seat behind the driver's compartment. The cause of death would later be shown to be four gunshot wounds to the chest area. Finn also found a revolver in the rear of the van. Other officers transported defendant away from the scene and to a hospital for treatment of head injuries.

The testimony of Officer Lynn and Hodges substantially corroborated Finn's testimony. Both testified that they observed no one exit the van at any time.

An evidence technician processed the scene. No fingerprints were found at the scene or on the gun. The gun contained five expended cartridges and one live cartridge. No gunshot residue test was performed on defendant. A firearms expert later testified that the four bullets removed from the victim were fired from the gun found in the van. The State made no connection between ownership of the gun and defendant.

Defendant presented no evidence and instead relied on the State's inability to disprove beyond a reasonable doubt that another person shot the deceased in the van and escaped without being observed by any witness. The jury found defendant guilty of murder, and this appeal followed.

Defendant first contends that the trial court failed to exercise its discretion in denying the jury's request for transcripts of the trial testimony. Defendant alleges the court's action was prejudicial in that the jury's review of certain testimony, if allowed, may have affected the verdict.

During deliberations, the jury sent a note to the court inquiring, "Is it possible to read transcripts of any written testimony?" The court answered:

> "I am going to answer that: 'There are no transcripts of any of the witnesses' testimony available at this time. Nor for the conceivable—There are no transcripts of any witnesses' testimony available. Please continue your deliberation.' "

Defense counsel, although present, answered in the negative to the court's specific inquiry as to whether he had any objection to the court's answer. Defendant's post-trial motion does not cite this matter as error.

The parties in this case have directed this court to numerous cases which have varying degrees of relevancy to the facts of this case. While the parties agree that, generally, a trial court has discretion to grant or refuse jury requests for evidence (*People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577; *People v. Bryant* (1988), 176 Ill. App. 3d 809, 531 N.E.2d 849), which discretion will not be disturbed on review absent a showing of abuse thereof (*Pierce*, 56 Ill. 2d 361, 308 N.E.2d 577), the parties dispute the application of the law beyond these general propositions. We accordingly undertake a brief review of the cases to determine the applicable law.

Defendant places heavy reliance on a line of cases holding that it is error for a court to deny a jury request for evidence in the mistaken belief that it has no discretion to grant the request. (*People v. Autman* (1974), 58 Ill. 2d 171, 317 N.E.2d 570; *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166; *People v. Tansil* (1985), 137 Ill. App. 3d 498, 484 N.E.2d 1169.) These cases are typified by the jury making either a general or specific request to review evidence, and a court response which, *on its face*, indicates that the court erroneously believed that it had no discretion to allow the jury to see evidence during deliberations. For example, in *Autman*, the court responded, "No. It is not permissible to read or play back testimony." (*Autman*, 58 Ill. 2d at 176, 317 N.E.2d at 572.) Appellate courts have interpreted responses of this nature as indicating a trial court's mistaken belief that it had no discretion whatsoever to submit evidence to the jury. Where the denial of the jury's request cannot be classified as harmless, reversal is required. Compare *Autman*, 58 Ill. 2d 171, 317 N.E.2d 570, and *Queen*, 56 Ill. 2d 560, 310 N.E.2d 166 (testimony sought found to be critical to issue of guilt), with *Pierce*, 56 Ill. 2d 361, 308 N.E.2d 577 (testi-

mony sought was unequivocally incriminating and damaging to defendant).

We believe that defendant misplaces his reliance on the above cases to support his assertion that, in this case, the court's response was similarly defective. Clearly, the court's response was not an affirmative statement that the jury was prohibited from reviewing trial transcripts as occurred in *Autman, Queen* and *Tansil.* These cases are, therefore, distinguishable.

Defendant next places heavy reliance on a set of cases which recognize error where the court fails to determine, before responding negatively, the *specific* evidence or testimony desired by a jury making a *general* request. These courts rationalize that such a failure signals a trial court's erroneous belief that it lacked discretion to grant the jury's request. (See *People v. Bryant* (1988), 176 Ill. App. 3d 809, 531 N.E.2d 849; *Tansil,* 137 Ill. App. 3d 498, 484 N.E.2d 1169; *People v. Jackson* (1975), 26 Ill. App. 3d 618, 325 N.E.2d 450.) Absent other affirmative proof demonstrating that the court was aware of its discretion (*Bryant,* 176 Ill. App. 3d at 813, 531 N.E.2d at 852), these cases conclude that reversible error has occurred as the unknown nature of the evidence sought may have influenced the finding of guilt.

■ We find defendant's reliance on this second category of cases to be well placed. Here, the jury sent a general request to review trial testimony, and the court failed to inquire what evidence the jury desired. As was the case in *Bryant, Tansil* and *Jackson,* the court's failure here to inquire before responding signals its belief that it had no discretion in the matter.

Notwithstanding the possible applicability of the second category of cases to this case, we believe that yet a third set of cases is worth discussing. These cases hold that where defendant acquiesces in the court's response, and then fails to raise the matter in his post-trial motion, waiver occurs. (See *People v. Perry* (1989), 183 Ill. App. 3d 534, 540 N.E.2d 379; *People v. Boyd* (1980), 88 Ill. App. 3d 825, 410 N.E.2d 931; *People v. Whitley* (1977), 49 Ill. App. 3d 493, 364 N.E.2d 511; *People v. Virgin* (1973), 9 Ill. App. 3d 902, 293 N.E.2d 349.) In these cases, defendant was present and responded negatively to the court's direct inquiry as to whether an objection existed to the response given to the jury. These cases rationalize that a defendant cannot acquiesce to a response which his timely objection might well have altered, fail to allege the matter as error in his post-trial motion for a new trial, and then claim error

for the first time on appeal. *Boyd*, 88 Ill. App. 3d at 861, 410 N.E.2d at 957; *Whitley*, 49 Ill. App. 3d at 499, 364 N.E.2d at 517.

In this case, the court specifically asked defense counsel whether he objected to the response given, and counsel replied "no." Defendant also failed to raise the matter in his post-trial motion. Under the reasoning of *Boyd, Whitley* and *Virgin*, defendant has waived the matter.

Aside from the three categories of cases above, a final set of cases exists in which the jury submits a *specific request* for testimony, and the court denies the request with a response which *does not* facially indicate a lack of understanding regarding its discretion in handling the matter. For various reasons not relevant here, our courts have refused to find error in such situation. See *People v. Olinger* (1986), 112 Ill. 2d 324, 493 N.E.2d 579, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 180, 107 S. Ct. 1329; *People v. Perry* (1989), 183 Ill. App. 3d 534, 540 N.E.2d 379; *People v. Frisby* (1987), 160 Ill. App. 3d 19, 512 N.E.2d 1337; *People v. Wills* (1987), 153 Ill. App. 3d 328, 505 N.E.2d 754; *People v. Boyd* (1980), 88 Ill. App. 3d 825, 410 N.E.2d 931; *People v. Slaughter* (1980), 84 Ill. App. 3d 1103, 405 N.E.2d 1295; *People v. Tolbert* (1980), 81 Ill. App. 3d 977, 401 N.E.2d 1004; *People v. Singletary* (1979), 73 Ill. App. 3d 239, 391 N.E.2d 440; *People v. Whitley* (1977), 49 Ill. App. 3d 493, 364 N.E.2d 511; *People v. Anthony* (1975), 30 Ill. App. 3d 464, 334 N.E.2d 208.

Applying this latter set of cases to this case, none are readily applicable. Unlike the present case, in each of the above cases, a specific request was involved. This permitted the reviewing court to assess whether the court's discretion was properly exercised.

Our analysis of the above case law persuades us to conclude that the better result in this case is to treat the matter as waived. Defense counsel was present when the court received the note and specifically agreed to the response given to the jury. Under such circumstances, defendant should not now come before this court and allege error for the first time when his timely objection may have altered the court's conduct. To hold otherwise in this case would readily undermine the purposes of the waiver rule, which include giving the trial court the opportunity to correct the error thereby eliminating unnecessary reviews and reversals, and preventing unlimited litigation. M. Graham, Cleary & Graham's Handbook of Illinois Evidence §103.8 (5th ed. 1990).

*People v. Howard* (1991), 147 Ill. 2d 103, 588 N.E.2d 1044, a case supplied by the State in a motion to cite supplemental author-

ity, supports the conclusion we reach. In *Howard*, defendant similarly alleged that the court failed to exercise its discretion in responding to a jury's request to review defendant's confession. The court there responded that the jury had all the evidence and should continue its deliberations. Defendant made no objections to the court's actions and failed to raise the matter in his post-trial motion. *Howard*, 147 Ill. 2d at 153-54, 580 N.E.2d at 1065.

In its analysis, the supreme court refused to second-guess defense counsel's handling of the matter. The court speculated that counsel may have thought the confession would hurt defendant and not help the jury in its deliberations. Counsel's failure to object and to raise the matter in his post-trial motion suggested counsel's satisfaction with the way in which the inquiry was handled. The court itself failed to see how the confession would have benefitted defendant. For these reasons, the court rejected defendant's argument that error had occurred. *Howard*, 147 Ill. 2d at 154-55, 588 N.E.2d at 1065-66.

While the jury's inquiry in *Howard* was specific, and while the inquiry here was general, we believe the same result is justified. Counsel apparently was satisfied with how the court handled the matter. He neither objected nor raised the matter in his post-trial motion. We will not second-guess counsel's decisions.

Even if we were to reach the merits of the issue, we fail to see how any *specific* testimony would have assisted defendant. Defendant presented no evidence, and the testimony of the State's three occurrence witnesses was prejudicial to the defense. All three agreed that no one exited the van at any time, and all had the opportunity to observe the van. We fail to see how the jury's second review of this testimony would benefit defendant. Indeed, if the jury had made a specific request for such testimony and the court denied such request, we would be hard pressed to reverse under the applicable (abuse of discretion) standard of review. See *Pierce*, 56 Ill. 2d 361, 308 N.E.2d 577 (testimony damaging to defendant); *Tolbert*, 81 Ill. App. 3d 977, 401 N.E.2d 1004 (testimony sought would do nothing to convince jury that defendant was not guilty).

Defendant's second contention on appeal is that the court denied him his sixth amendment right to confront an adverse witness when it refused to allow Officer Finn on cross-examination to mark on a photograph the location of his parked vehicle with respect to the van.

During cross-examination of Officer Finn, defendant posed numerous questions to illuminate where Officer Finn parked his squad

car in relation to the recently crashed van. Finn testified that the car was facing east, eight feet behind the van and at a right angle to prevent any getaway. The car was on the street but in the parking lane. The passenger side of the car was closest to the rear of the van. Finn could see the driver's door.

To illustrate for the jury the relative positions of the two vehicles, defendant asked Officer Finn to draw on People's exhibit 3 the location of his car. This exhibit is a five-inch by seven-inch photograph of the scene taken after Finn had removed his vehicle. The State's general objection to the question was sustained, and defendant propounded additional questions about the positions of the vehicles. Defendant made no offer of proof, did not inquire into the court's basis for excluding the testimony, and did not raise the issue in his post-trial motion.

■ We believe that defendant has waived review of this contention by not including the issue in his post-trial motion; further, the plain error exception does not require that we reach the merits of the issue. (*People v. Odle* (1989), 128 Ill. 2d 111, 133-34, 538 N.E.2d 428, 437, *cert. denied* (1990), 497 U.S. 1031, 111 L. Ed. 2d 798, 110 S. Ct. 3289.) Although the evidence against defendant was largely circumstantial, three witnesses testified that no other person was in the van. All witnesses had significant opportunity to view the van and all observed it from the time the shots were heard until it came to rest. On the record, therefore, we do not believe the evidence was closely balanced.

Nor must we address the merits of the issue on the ground that the court's actions were so fundamentally infirm that defendant received less than a fair trial. The jury heard significant testimony on both direct and cross-examination regarding the location of the van with respect to the officers' vehicle. The small size of the photograph must also be considered. Because very little would have been added if the attempted cross-examination were allowed, defendant was not denied a fundamental right. (See *People v. Lindgren* (1982), 111 Ill. App. 3d 112, 119, 443 N.E.2d 1129, 1135 ("[I]n determining whether a defendant has been denied the right to confront witnesses against him, a court must look to what was allowed, not what was prohibited").) For these reasons, we treat defendant's second contention as waived and find that the plain error exception does not require us to notice the alleged error.

Defendant's third allegation of error is that prosecutorial comments during closing argument improperly shifted the burden of proof. During rebuttal argument, the prosecutor stated:

"Ladies and gentlemen, you do not have to create reasonable doubt. Okay? *You do not have to do the defendant's job or obligation for him.* In this case we do not have to prove sense to a senseless crime. We do not have to give credence to what the defendant did to his victim. That is not why we are here.

\* \* \*

There has been some discussion by the defense. And remember, opening statements are not evidence. *You did not hear any evidence of a third person being involved in this case, have you?*

Well, what I say, and what the defense attorneys [*sic*] says is not evidence. The evidence you heard came from the witness stand, came from certain stipulations and the evidence which you will be able to see when you go back presented to the jury room. *There is no affirmative evidence of a third person.*

\* \* \*

Now to believe, arguably to believe the defendant, you'd have to believe that number one, this man would shoot one victim four times, not shoot the other guy, leave the gun behind. Remember, the gun is found inside the van. Leave the gun behind, still loaded. You will see that there is still one bullet recovered in that gun. He left behind a loaded gun and left one victim alive to testify. It doesn't make sense. You know why it doesn't make sense? Because this is a senseless crime. And you don't have to do that for a defendant. *You do not have to create doubt for the defendant.*" (Emphasis added.)

Defendant made no objections to the above comments and failed to raise the matter in his post-trial motion. The court gave no curative instruction during the argument, although it did later instruct the jury with Illinois Pattern Jury Instructions, Criminal, Nos. 1.03 and 2.03 (2d ed. 1981), which inform the jury that arguments of counsel are not evidence and that defendant is presumed innocent until proven guilty by the State beyond a reasonable doubt.

It is a fundamental doctrine to our system of criminal jurisprudence that a defendant is presumed innocent until proven guilty beyond a reasonable doubt. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 469-70, 220 N.E.2d 432, 433.) Equally fundamental is the rule that the burden is on the prosecution to prove beyond a reasonable doubt the commission of the crime charged and its perpetration by

the person accused. This burden never shifts to the accused, but remains the responsibility of the prosecution throughout the trial. (*Weinstein*, 35 Ill. 2d at 469-70, 220 N.E.2d at 433-34.) Prosecutorial arguments which transgress these precepts to a defendant's manifest prejudice deny him a fair trial. *Weinstein*, 35 Ill. 2d 467, 220 N.E.2d 432; *People v. Tyson* (1985), 137 Ill. App. 3d 912, 485 N.E.2d 523; *People v. Giangrande* (1981), 101 Ill. App. 3d 397, 428 N.E.2d 503.

Initially, we are faced with the issue of whether defendant has waived the issue for review. Because defendant failed to make a contemporaneous objection and include the matter in his post-trial motion, defendant has waived the issue for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) Nevertheless, we address the merits of the issue because the comments clearly implicate defendant's substantial rights, namely, the presumption of innocence and the State's burden of proof. See *Weinstein*, 35 Ill. 2d at 471, 220 N.E.2d at 434 (refusing to find waiver).

Turning to the merits of the issue, we believe that while parts of the prosecutor's comments were improper, reversal is not required. To merit reversal, a prosecutor's improper comments must be of "substantial magnitude" when viewed in the context of the entire record and argument. (*People v. Scott* (1990), 194 Ill. App. 3d 634, 645, 551 N.E.2d 288, 295.) Reversal is not warranted unless the improper remarks resulted in substantial prejudice to the defendant; if the improper comments did not constitute a material factor in the conviction of defendant, the verdict will not be disturbed. *Scott*, 194 Ill. App. 3d at 645, 551 N.E.2d at 295.

■ In this case, we believe that reversal is not required for the following reasons. First, we find proper the prosecution's comments that no evidence of a third person existed. This was a truthful comment which is wholly supported by the evidence. Moreover, the prosecution may describe the State's evidence as uncontradicted—even though the defendant is the only one who could have contradicted it—provided the comment was not intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify. (*People v. Lyles* (1985), 106 Ill. 2d 373, 390, 478 N.E.2d 291, 297, *cert. denied* (1985), 474 U.S. 859, 88 L. Ed. 2d 141, 106 S. Ct. 171.) Here, the prosecution's comment that no evidence of a third person existed was a fair comment on the evidence which was not intended to direct the jury's attention to defendant's failure to testify. Also, the comment was a fair reply

to defendant's closing argument that a third person committed the crime.

 Second, the comments regarding defendant having to create doubt for himself must be viewed in context. As argued by the State, the comments were an attempt to respond to defendant's closing argument that the State's theory of the case made little sense. This context of the argument is arguably apparent from defendant's counsel's failure to object. Moreover, we do not believe the intent underlying the comments was to shift the burden of proof.

Third, the comments must be taken in light of the entire record. Prior to *voir dire*, the court extensively explained to the venire panel the respective roles of the court and jury and what the jury could expect during trial. The court particularly informed the venire that defendant was presumed innocent; that this presumption remained with defendant unless and until the State proved him guilty beyond a reasonable doubt; and that defendant had no obligation to prove his innocence or to testify in his own behalf. The court then asked the jurors if each understood these principles; no veniremember indicated any objection with these principles.

After *voir dire*, the court again emphasized the State's burden of proof, defendant's presumption of innocence, and defendant's right to not produce evidence on his own behalf. During defendant's closing argument, defendant informed the jury numerous times that the State had the burden of proving him guilty beyond a reasonable doubt. Finally, during instructions, the jury received the standard instructions regarding defendant's presumption of innocence, the State's burden of proof, and that opening and closing arguments are not evidence.

In light of the entire record, we cannot say that the prosecution's two isolated comments were a material factor in defendant's conviction. The jury was clearly informed of the State's burden of proof on many occasions throughout the trial. This same jury also heard three eyewitnesses testify that they had an unobstructed view of the van from the moment of the gunshots until the van came to rest. None of the eyewitnesses observed any third person. Accordingly, upon review of the entire record, we do not believe reversal is warranted.

In evaluating the merits of defendant's contention, we are not persuaded that the cases he marshals to support his position require a contrary finding. In *People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432, the prosecutor repeatedly argued to the jury that, be-

fore it found the defendant not guilty, defendant had the burden of raising a reasonable doubt of her guilt. The prosecutor persisted in that line of argument despite rulings by the trial judge sustaining defense counsel's objections to the statements. Some 17 objections were made and sustained during the course of argument. In concluding that the improper comments amounted to reversible error, the court opined that the comments were not only incorrect statements of law, but were prejudicial for two reasons. First, the comments "destroyed the presumption of innocence." Second, they imposed upon defendant a heavier burden than the law required while lessening that of the prosecution. The court found the arguments "tantamount to telling the jury that defendant had the burden of proving her innocence." *Weinstein*, 35 Ill. 2d at 470, 220 N.E.2d at 434.

We believe *Weinstein* is distinguishable because of the extreme nature of the comments which occurred in that case. Similarly distinguishable is *People v. Harbold* (1984), 124 Ill. App. 3d 363, 464 N.E.2d 734, a case with equally egregious comments. Here, the comments in question only occurred twice, were of less egregious nature, and for the reasons noted above, did not "destroy[ ] the presumption of innocence."

We also distinguish *People v. Tyson* (1985), 137 Ill. App. 3d 912, 485 N.E.2d 523, and *People v. Giangrande* (1981), 101 Ill. App. 3d 397, 428 N.E.2d 503. In *Tyson*, defendant was charged with theft, and the State relied heavily on circumstantial evidence to prove its case. Defendant did not testify and presented no other evidence. In closing argument, the prosecutor stated:

> " 'First of all, you have to have been presented in this case with a theory of innocence. \*\*\*
>
> I submit to you ladies and gentlemen, that you were not presented with a theory. You're not presented with a theory of innocence, and above all, if you were not presented with something, that's not reasonable \*\*\*.' " (*Tyson*, 137 Ill. App. 3d at 920.)

Defense counsel's objections were sustained, but the court did not instruct the jury to disregard the comment.

In finding that the comments constituted reversible error, the court believed they implied that defendant had to present evidence to support his innocence. As the defendant there did not testify or present any evidence on his behalf, the court believed that the comments may have improperly influenced the jury. (*Tyson*, 137 Ill. App. 3d at 921-22, 485 N.E.2d at 530.) Accordingly, the court re-

versed, and in so doing, rejected the State's claim that the sustaining of the objection and subsequent instruction regarding the burden of proof cured the error.

In *Giangrande*, a murder case predicated on circumstantial evidence, the prosecutor stated, "Now where's the evidence that the defendant didn't do it?" (101 Ill. App. 3d at 402.) Defendant's objection was overruled. In finding the comment to be error, which in conjunction with other errors required reversal, the court believed it improperly suggested to the jury that defendant had the burden to produce evidence.

Arguably, *Tyson* and *Giangrande* appear to parallel the instant case. Nevertheless, we believe that each case must turn on its own facts and circumstances. Comments which in one case are of substantial magnitude may not be in another case. Again, allegations of improper prosecutorial comment must be taken in the context of the entire record and argument. (*Scott*, 194 Ill. App. 3d at 645, 551 N.E.2d at 295.) After reviewing the record in this case, we are of the conclusion that the prosecutor's comments were not of sufficient magnitude to warrant reversal.

We next address defendant's allegation that his indictment should have been dismissed for failure to conduct a preliminary hearing where he was initially charged by complaint. Defendant was arrested on July 27, 1988, and charged by complaint with the offense of first-degree murder. No preliminary hearing was conducted, and a grand jury indictment against defendant was filed in the circuit court on August 4, 1988.

Relying on the constitutional history of article I, section 7, of the Illinois Constitution (Ill. Const. 1970, art. I, §7), and Justice Ward's dissenting opinion in *People v. Hendrix* (1973), 54 Ill. 2d 165, 295 N.E.2d 724, defendant contends that, because he was not initially charged by indictment and was not afforded a preliminary hearing, the indictment on which he was tried should have been dismissed as violative of the Constitution. We disagree.

■ Defendant's argument has been directly rejected by our supreme court. In *Hendrix*, defendant was charged by complaint on August 6, 1971, and a preliminary hearing was ordered on August 18. On August 19, the grand jury issued an indictment. The Illinois Supreme Court held that there was no need to dismiss the indictment on the basis that defendant did not receive his preliminary hearing under article I, section 7. (*Hendrix*, 54 Ill. 2d at 169, 295 N.E.2d at 726-27; accord *People v. Smith* (1983), 115 Ill. App. 3d 453, 450 N.E.2d 1242.) All that is required is that an accused be af-

forded a prompt probable-cause determination of the validity of the charge either at a preliminary hearing or by an indictment by a grand jury. (*Smith*, 115 Ill. App. 3d at 455, 450 N.E.2d at 1243.) Because defendant has not presented this court with reason to deviate from our repeated holdings, we reject his argument.

Defendant's final contention on appeal is that the court improperly considered during defendant's sentencing a statement he made which allegedly was taken in violation of his *Miranda* guarantees. During sentencing, the State submitted in aggravation a statement made by defendant to Commander Radke following his arrest on February 24, 1976, for an unrelated murder charge. Radke testified at defendant's sentencing hearing:

> "Well, after we gave him his *Miranda* warnings we asked him about the incident and he did not want to talk about it and then we, I stated to him, and State's Attorney Smith also stated to him, you know this is a very serious incident, that the fellow that was shot possibly may die. At this point he stated, 'I hope that the victim would die. I even shot him after he fell to the parkway.'"

Radke testified to defendant having made a similar statement at the time of his arrest.

On cross-examination, defendant's counsel attempted to elicit the circumstances surrounding the manslaughter. Radke offered little information to the court about the crime. Defendant ultimately pleaded guilty to voluntary manslaughter and received a term of imprisonment of 5 to 15 years.

In argument to the court, the prosecution argued Radke's statement as evidence that defendant disrespects human life. The prosecutor also argued the nature of the murder in the instant case, defendant's prior criminal history, which included the voluntary manslaughter conviction, a 1986 bail bond violation, for which defendant received two years' imprisonment, and a 1983 unlawful use of weapons charge, for which defendant received nine months' imprisonment.

In mitigation, defense counsel argued defendant's work history, which included positions as a sales representative, carpenter, assembly line worker, cook, and construction worker, and defendant's education, which included defendant's receipt of his GED and college credits.

In announcing sentencing in this case, the court referred to defendant's criminal record and noted that both killings involved multiple shootings at close range. The court also referred to

Radke's testimony that defendant apparently relished shooting the other individual. The court believed that defendant had every opportunity for useful citizenship but had chosen to throw it all away. The court further believed that defendant's criminal history and the circumstances of the instant crime revealed defendant to be a danger to society who had no regard for society and human life. For these reasons, the court sentenced defendant to 55 years' imprisonment.

On appeal, defendant claims that the court erred in relying on the prior statement where it was taken in violation of his *Miranda* rights. The State responds that defendant has waived this objection because defendant did not object to the testimony and did not raise the matter in his post-trial motion. The State further responds that even if a *Miranda* violation occurred, the court could properly consider the testimony in aggravation. Finally, the State argues any error in considering the testimony was harmless in light of defendant's extensive criminal background.

■ Regarding the issue of waiver, we address the merits of the issue as, clearly, the length of defendant's sentence implicates his substantial rights. Turning to the merits of the argument, we hold the court properly exercised its discretion in considering the statement.

A sentencing judge is always charged with the difficult task of fashioning a sentence which strikes the appropriate balance between protection of society and rehabilitation of the offender. (*People v. Wright* (1987), 161 Ill. App. 3d 967, 977, 514 N.E.2d 817, 824.) " ' "Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." ' " (*Wright,* 161 Ill. App. 3d at 977, 514 N.E.2d at 824, quoting *People v. La Pointe* (1981), 88 Ill. 2d 482, 497, 431 N.E.2d 344, quoting *Williams v. New York* (1949), 337 U.S. 241, 247, 93 L. Ed. 1337, 1342, 69 S. Ct. 1079, 1083.) The only requirement for admission is that the evidence be reliable and relevant, and this is a decision left to the discretion of the sentencing court. (*People v. Tigner* (1990), 194 Ill. App. 3d 600, 607, 551 N.E.2d 304, 308.) The relaxation of the formal rules of evidence at the sentencing stage is intended to provide the sentencing judge with a wide range of information concerning the defendant's life, character, criminal history and propensity to continue to commit other offenses. *Tigner,* 194 Ill. App. 3d at 607, 551 N.E.2d at 308.

In this case, we need not address whether a sentencing court may properly consider in aggravation a statement taken in violation of a defendant's *Miranda* rights. In this case, Radke testified to defendant making two similar statements. No argument has been advanced that the earlier statement violated defendant's *Miranda* rights.

Turning to whether the court could properly consider defendant's statement made in connection with defendant's voluntary manslaughter conviction, we find that the court acted within its discretion. The age of the statement and its reliability went to the weight of the statement, not its admissibility. (*Cf. Tigner*, 194 Ill. App. 3d at 607, 551 N.E.2d at 308 (hearsay statements are not objectionable *per se*, and hearsay objections go only to the weight, not the admissibility, of the statement).) Our review of the record leads us to conclude that the court did not give excessive weight to defendant's earlier statement. As detailed earlier, the court had before it the State's evidence in aggravation and defendant's evidence in mitigation. In assessing this evidence, the court considered defendant to be a danger to society and one who had thrown opportunity away. We cannot say that a different conclusion regarding defendant's sentence would have resulted had the objectionable testimony not been received. Accordingly, we affirm defendant's sentence.

For all the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and MANNING, JJ., concur.