(No. 64151.—

*In re* SHERWOOD LAWRENCE LEVIN, Attorney,
Respondent.

*Opinion filed September 21, 1987.*

CUNNINGHAM, J., took no part.

John A. Holtaway, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Sherwood L. Levin, of Chicago, *pro se.*

JUSTICE MORAN delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a nine-count complaint before the Commission alleging, *inter alia,* that the respondent, Sherwood Lawrence Levin, neglected three criminal appeals, made misrepresentations to his clients, commingled and converted a client's fund and failed to cooperate with the Commission's investigation of these charges. Respondent failed to answer or otherwise plead to the complaint, and the Hearing Board entered an order pursuant to Commission Rule 236 deeming the allegations of the complaint admitted. Thereafter, the Hearing Board allowed respondent's motion to vacate its default order and for leave to file his answer *instanter.* At the conclusion of the hearing, the Hearing Board allowed respondent's motion to order the parties to file written closing arguments. Respondent failed, however, to file his closing argument.

The Hearing Board concluded that the Administrator proved by clear and convincing evidence that the respondent was guilty of the misconduct alleged in the complaint and recommended that respondent be disbarred. Neither party filed exceptions with the Review Board, and the Hearing Board's report was filed with this court and submitted as an agreed matter pursuant to Rule 753(e)(1) (107 Ill. 2d R. 753(e)(1)). Thereafter, respondent filed a motion in this court for leave to file exceptions *instanter* and to remand this cause to the Review Board for further proceedings. We denied respondent's motion and ordered the parties to file briefs. (107 Ill. 2d R. 753(e)(1).) Respondent failed, however, to comply with the briefing schedule set by this court's order, and we directed him to show cause why the report and recommendation of the Hearing Board should not be approved. Respondent answered the rule to show cause and moved for leave to file his brief *instanter*. The court subsequently denied respondent's motion and instead ordered him to file his brief on or before December 19, 1986. Respondent complied with that order and the rule to show cause was discharged.

The only issue presented for review is whether respondent's misconduct warrants disbarment.

Respondent was licensed to practice law in Illinois in 1966. On January 16, 1981, the Hearing Board reprimanded respondent pursuant to Commission Rule 282 for neglecting a legal matter entrusted to him by his client and concealing the fact that he had not filed an action on the client's behalf. (*In re Levin* (January 16, 1981), Administrator No. 79—CH—57.) On November 1, 1984, a majority of the Review Board affirmed the Hearing Board's recommendation that respondent be suspended from the practice of law for a period of six months for neglecting the affairs of two other clients by failing to pursue their claims and for failing to cooperate

in the Commission's investigation of the charges. This court entered a rule to show cause why the report and recommendations of the Review Board should not be adopted. Respondent failed to answer the rule to show cause, and the court allowed the Administrator's motion to approve the Review Board's report and recommendation that respondent be suspended from the practice of law for a period of six months. *In re Levin* (February 22, 1985), No. 61108.

The charges currently before this court stem from respondent's representation of three separate clients. He represented Jose Perez at his murder trial in June 1980. Respondent testified that Perez' sister, Maria Ortiz Herrera, retained him to represent Perez and that he and Ortiz agreed that his fee would be between $2,500 and $3,000, of which he was eventually paid approximately $1,000. Perez was convicted and sentenced to serve 25 years in the Department of Corrections. At the time of respondent's hearing, Perez was an inmate at the Stateville penitentiary. Consequently, the Administrator introduced Perez' evidence deposition at the hearing. Perez testified that, at the conclusion of his sentencing hearing, he engaged respondent to prosecute his appeal, but that there was no discussion regarding respondent's fee. The record further indicates that the following colloquy took place at the sentencing hearing:

"THE COURT: Who is going to handle [the appeal]?

[RESPONDENT]: At this time, Judge, I believe I'm going to be handling the appeal, is that correct?

THE COURT: Okay, then I won't appoint anybody.

[RESPONDENT]: We would be asking for a free transcript. I have an order to that effect.

THE COURT: I anticipate he doesn't have any money.

[RESPONDENT]: Correct, your Honor."

Respondent filed a notice of appeal on behalf of Perez on August 6, 1980. He did not, however, file a docketing statement or the record, and took no further action to prosecute the appeal. Thereafter, the appellate court notified respondent that the appeal would be dismissed unless a docketing statement was filed, but respondent failed to do so. Consequently, the appellate court dismissed Perez' appeal for want of prosecution on September 23, 1980. At no time did respondent file a motion to withdraw.

Perez testified that he telephoned respondent in September 1980 to inquire why his appeal had not yet been heard. Respondent assured Perez that he would hear something from the appellate court concerning the appeal by the following spring. Perez also wrote respondent letters in February 1983 and again in the summer of 1983, requesting information regarding the status of his appeal. Perez testified that respondent never answered either letter and that he never received any other letters from respondent concerning his appeal. Later that summer, Perez retained new counsel to prosecute his appeal. Perez' new attorney wrote respondent concerning the status of the appeal in November and December 1983. Again, respondent failed to answer these letters. Several months later, the new attorney informed Perez that his appeal had been dismissed.

Perez filed a complaint against respondent with the Commission on January 3, 1984. The Commission wrote respondent in January and February 1984 requesting his written response to the charges. Respondent failed to answer the charges. As a result of respondent's failure to cooperate with the Commission's efforts to investigate this matter, the Commission served respondent with a subpoena *duces tecum* requiring his personal appearance before the Commission. Respondent appeared before the

Commission on April 2, 1984, to respond to the charge filed by Perez.

Respondent testified before the Hearing Board that he did not discuss an appeal with either Perez or his family before the sentencing hearing. After sentencing, respondent was still owed for his services at trial, and he determined that Perez and his family would be unable to pay the costs of an appeal. He further testified that on August 6, 1980, he sent Perez a letter, in care of his sister, indicating that he had filed a notice of appeal and advising Perez to retain another attorney or to request that the appellate defender be appointed. Respondent did not, however, send this letter by certified mail. Except for this letter, respondent testified that he had no further communications with Perez concerning his appeal.

Respondent further testified that his brother represented Perez in a workers' compensation claim. On May 12, 1982, this claim was settled for $443.31, and Perez' sister paid respondent $200 on the fee still due him for his services at the murder trial. There was no discussion regarding payment for an appeal at that time.

In 1982, respondent represented Marvin Johnson at his trial for armed robbery. Since Johnson was incarcerated at the time of the hearing, the Administrator introduced Johnson's evidence deposition. After Johnson was convicted, the clerk of the circuit court of Cook County issued a bond refund check payable to respondent in the amount of $4,500. Johnson testified that he authorized respondent to retain $3,000 of the bond refund in payment for his services at trial. He directed respondent to pay the remaining $1,500 to Johnson's mother, Shirley Peoples, who had posted the bond. The record indicates that the bond refund check was deposited into respondent's general office account, the balance of which fell below $1,500 before respondent disbursed the funds to

Peoples. Respondent used the funds to purchase coffee, to pay employee wages and to rent a parking space.

Johnson retained respondent to prosecute his appeal and to file a motion for reduction of bond on August 31, 1982. Respondent told Johnson that he would file the appeal. Johnson testified that when he asked respondent the amount of his fee, respondent told him, "Don't worry about it. We will deal with that once I get you back in court." Thereafter, respondent never told Johnson what his fee would be. On September 20, 1982, respondent filed a notice of appeal on Johnson's behalf. He took no further action to prosecute the appeal, and the appellate court dismissed the cause for want of prosecution on February 10, 1983. Respondent never filed a motion to withdraw as Johnson's counsel and never informed Johnson that his appeal had been dismissed.

In November 1982, Johnson wrote the clerk of the appellate court concerning the status of his motion for bond reduction. The clerk's office informed him that no motions had been filed in his case. On December 13, 1982, Johnson wrote respondent concerning the status of his motion for bond reduction, his appeal and the balance due his mother from the bond refund. Thereafter, Johnson had a telephone conversation with respondent in which respondent acknowledged that he had received the December 13 letter. Respondent further stated that he had sent Peoples the balance of the bond refund and that he did not know "what was going on with the courts," but that he would check into the matter. Subsequently, Johnson had numerous conversations with respondent in which respondent assured Johnson that he had filed the bond reduction motion, that he was waiting to hear from the court concerning the appeal, and that he had sent Peoples a check for the balance of the bond refund.

Johnson later wrote the clerk of the appellate court concerning the status of his appeal. The clerk, in a letter dated February 23, 1983, informed Johnson that his appeal had been dismissed for want of prosecution. Thereafter, Johnson telephoned respondent. Respondent told Johnson that he could not understand what could have happened and that he should not worry about the matter.

On March 29, 1984, Johnson wrote respondent a letter directing him to disburse the $1,500 balance of the bond refund to his mother. After respondent failed to respond to this letter, Johnson called him. Again, respondent told Johnson that he had already mailed Peoples a check which she should have received. Peoples then filed a small claims action against respondent in the circuit court of Cook County seeking to recover the balance of the bond refund. The action was settled in June 1984 when respondent's assistant appeared in court and gave Peoples a check for $1,500.

Johnson and Peoples also filed a complaint against respondent with the Commission. Respondent twice failed to respond to the Administrator's requests for his written answer to the charges. The Commission then served him with a subpoena *duces tecum* requiring his appearance together with all files, records and documents related to the Johnson matter before the Commission on December 1, 1983. Respondent appeared as directed and gave testimony regarding the charges filed by Johnson and Peoples. He failed, however, to produce all the files related to his representation of Johnson.

Respondent testified that he believed Johnson, not his mother, posted the bond and that the balance of the bond refund was to be returned to Johnson. Although he admitted having had Johnson execute a petition for a bond refund, respondent denied that he ever attempted to surrender the bond receipt. He further testified that

the refund check was deposited into the general office account without his knowledge. Respondent denied that he ever agreed to represent Johnson. Instead, he testified that he informed Johnson that he could not represent him on appeal unless arrangements were made for the payment of his fee and that he directed Johnson to have his family contact him to make the necessary arrangements. He also testified that he agreed to seek a bond reduction if he handled the appeal. At no time, however, did any member of Johnson's family ask respondent to represent Johnson or contact him concerning arrangements for payment of a fee.

Johnson's codefendant, Ivan Jones, who was represented by a different attorney at trial, also engaged respondent to prosecute his appeal following his conviction of armed robbery. Jones testified at an evidence deposition that respondent quoted him a fee of $2,500. He further testified that respondent also agreed to file a motion for bond reduction. Respondent filed a notice of appeal on September 22, 1982.

In late October or early November 1982, Jones had a telephone conversation with respondent concerning the bond reduction motion. Respondent assured Jones that he was working on the motion and that everything would be "okay." Thereafter, Jones learned that respondent had not filed the motion. On December 17, 1982, Jones filed a *pro se* motion for reduction of appeal bond, which the appellate court denied on December 23, 1982.

After Jones' motion was denied, he called respondent concerning the status of his appeal. Respondent told Jones that he needed to contact Jones' family to discuss fees, but that everything would be all right. The record, however, shows that after he filed the notice of appeal, respondent failed to file both a docketing statement and the record. Nor did he file a motion to withdraw at any

time. On March 8, 1983, the appellate court issued respondent a rule to show cause why the appeal should not be dismissed for want of prosecution. Respondent failed to answer the rule and the court dismissed the appeal for want of prosecution on May 9, 1983. At no time thereafter, however, did respondent inform Jones that his appeal had been dismissed. To the contrary, Jones had a telephone conversation with respondent in early 1983 during which respondent again assured him that everything was all right. In mid-November 1983, however, the clerk of the appellate court notified Jones that his appeal had been dismissed.

On January 9, 1984, Jones filed a complaint against respondent with the Commission. Again, the Commission twice requested respondent's answer to the charges, and again, respondent never replied. As a result, the Commission served a subpoena *duces tecum* upon respondent requiring his personal appearance. Respondent appeared before the Commission on April 2, 1984, to answer the charges filed by Jones.

Respondent denied that he ever discussed either the appeal or his fee with Jones. He testified that he informed Jones that until Jones' family contacted him to make arrangements for the payment of his fee, he would do nothing more than file the notice of appeal. Respondent further testified that after he learned that Jones had filed a motion for bond reduction, he believed he was proceeding *pro se.*

Respondent has made no cognizable effort to prepare his brief in conformity with Rule 341(e) (107 Ill. 2d R. 341(e)). His brief lacks a statement of points and authorities as required by Rule 341(e)(1) (107 Ill. 2d R. 341(e)(1)). His statement of facts merely summarizes the procedural history of this case, fails to "contain the facts necessary to an understanding of the case," and fails to cite the record as required by Rule 341(e)(6) (107 Ill. 2d

R. 341(e)(6)). His brief is devoid of concise legal argument and fails to cite even a single pertinent legal authority to support his contentions. Moreover, respondent's oral argument before this court was nothing more than a mere repetition of the vague and rambling arguments raised in his brief.

The final determination of what sanction is appropriate in a disciplinary matter rests solely with this court. (*In re Hopper* (1981), 85 Ill. 2d 318, 323.) "When determining the nature and extent of discipline to be imposed, the respondent's actions must be viewed in relationship 'to the underlying purposes of our disciplinary process, which purposes are to maintain the integrity of the legal profession, to protect the administration of justice from reproach, and to safeguard the public.' (*In re LaPinska* (1978), 72 Ill. 2d 461, 473.)" *In re Crisel* (1984), 101 Ill. 2d 332, 343.

In *In re Hall* (1983), 95 Ill. 2d 371, respondent was retained to prosecute an appeal from an aggravated battery conviction. When he failed to file a brief, the appellate court dismissed the appeal for want of prosecution. Respondent failed to inform the client or his family of the dismissal notwithstanding their repeated inquiries concerning the status of the case. This court adopted the Administrator's recommendation and suspended respondent for three months.

In *In re Chapman* (1978), 69 Ill. 2d 494, this court suspended respondent for three months for his failure to prosecute three civil appeals. Less than one year later, respondent was retained to prosecute another appeal. (See *In re Chapman* (1983), 95 Ill. 2d 484.) He filed a notice of appeal and the record, but failed to file a brief. Nevertheless, respondent repeatedly assured his client that the action was proceeding in a normal manner and that he need not worry. The appellate court dismissed the appeal for want of prosecution. The Hearing Board

found that respondent had neglected a legal matter entrusted to him and that he had wilfully deceived his client. On the basis of these findings and in light of the fact that respondent had twice been previously disciplined for similar misconduct, the Hearing Board recommended that respondent be disbarred. The Review Board adopted the recommendation. Because respondent asserted that he had suffered from alcoholism, however, this court suspended respondent for two years and until further order, and stayed the suspension subject to the successful completion of probation. 95 Ill. 2d 484, 494-95.

In the instant case, respondent's misconduct is far more egregious than that of the respondents in *Hall* and *Chapman* and therefore warrants a more severe sanction. Like the respondent in *Chapman*, respondent has already been reprimanded and suspended for neglecting the affairs of three different clients. These sanctions have failed, however, to deter respondent from continuing to neglect his clients' affairs or from intentionally misleading them into believing that he was actively representing their interests. While respondent's alcoholism was a mitigating factor in our decision in *Chapman*, the record before us contains no mitigating evidence.

In addition, unlike the respondents in *Hall* and *Chapman*, respondent here also converted the proceeds of a bond refund check. This court has stated, " 'Other offenses might be excused, but conversion to his own use of the property of his client is an offense that cannot in any degree be countenanced.' " (*In re Stillo* (1977), 68 Ill. 2d 49, 54, quoting *People ex rel. Black v. Smith* (1919), 290 Ill. 241, 251.) "Conversion of a client's funds involves moral turpitude and is a flagrant violation of an attorney's duties." (*In re Pass* (1985), 105 Ill. 2d 366, 369-70.) Even a single act of conversion may warrant disbarment. 105 Ill. 2d 366, 370.

Finally, we are particularly disturbed by respondent's contempt for the disciplinary process and for this court. As previously noted, in 1984 the Review Board affirmed the Hearing Board's recommendation that respondent be suspended from the practice of law for six months. This court allowed the Administrator's motion to approve that recommendation after respondent failed to answer this court's rule to show cause. Consistent with his prior conduct, respondent continued to manifest his contempt for the Commission and for this court in the instant proceedings. He impeded the Commission's efforts to investigate the charges against him at the inquiry stage. Although the Hearing Board recommended disbarment, he failed to file exceptions with the Review Board. Once the cause was before this court, he failed to submit a timely brief. And when he finally did file his brief, it was wholly inadequate.

We are mindful that in *In re Hall*, this court stated that "more severe discipline is appropriate to deter neglect in criminal cases than in civil cases." (*In re Hall* (1983), 95 Ill. 2d 371, 375.) On the record before us, we do not believe that we can " 'permit this respondent to continue the practice of law, and thus invite the public to retain the purported services of one to whom the common obligations of his profession mean so little.' " *In re Feldman* (1982), 89 Ill. 2d 7, 13, quoting *In re Clark* (1956), 8 Ill. 2d 314, 321.

Accordingly, it is ordered that respondent be disbarred.

*Respondent disbarred.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.