THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES BRYANT, Defendant-Appellant.

First District (1st Division)   No. 86—2096

Opinion filed November 14, 1988.—Rehearing denied December 21, 1988.

Jeffrey Walker, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry, James E. Fitzgerald, and Elizabeth Sklarsky, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Charles Bryant was convicted of armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2) and attempted armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 8—4) and sentenced to seven years in prison. For the reasons below, we reverse and remand for a new trial.

Shortly before midnight on November 5, 1983, William Randolph and Steven Hall were robbed at gunpoint by an unknown assailant on Calumet Avenue in Chicago. While the robbery was in progress, a patrol car passed nearby, and Hall and the robber ran away. Randolph ran to the police car and told the officers that he had just been robbed. He then climbed into the squad car and gave a description of the robber, which was broadcast over the police radio.

Minutes later, police officer Alfred Pirolli spotted a man about two blocks from the scene of the robbery who matched the description of the robber. Pirolli called to the man, who stooped and seemed to put something on the ground, then approached Pirolli's squad car. Pirolli got out of the squad car, ordered the man to stop, then approached the man and conducted a patdown search. The patdown revealed $5.86, the amount Randolph said that the robber had taken, 11 .38-caliber pistol cartridges, and some personal effects.

Soon after, Officer David Roman arrived at the scene and was instructed by Pirolli to search the area where Bryant had stooped and apparently dropped something. The search revealed a Smith & Wesson .38 caliber revolver. The suspect was identified as the defendant, Charles Bryant. Thereafter, a squad car arrived with Randolph, who identified Bryant as the robber.

Bryant was arrested and charged with two counts of armed rob-

bery, one count of attempted armed robbery, and three counts of armed violence. The State nol-prossed all but one count each of robbery and attempted armed robbery. At trial, Randolph, Hall, Pirolli and Roman testified to the facts above.

The case went to the jury, and after some time in deliberation, the jury sent a request to the court, which stated "[M]ay we have a copy of the trial testimony?" The trial court refused, stating, "There's not a transcript available for you. You should rely on your collective memories of the testimony as you heard it." The record does not conclusively show that either Bryant or his counsel was present when the request was received and answered. The record shows an exchange between the court and the prosecutor immediately before the court addressed the jury. A supplemental hearing on the issue of Bryant's presence revealed that neither Bryant's counsel, the prosecutor, nor the court could recall with certainty whether Bryant or his counsel was present or absent when the jury request was received and refused. The jury returned a verdict of guilty of armed robbery and attempted armed robbery. Bryant was convicted and sentenced to seven years in the Illinois Department of Corrections. Bryant now appeals.

■ Bryant argues that the trial court failed properly to exercise its discretion when it refused the jury's request for a copy of the trial transcript. Bryant further argues that he was prejudiced because the trial court ruled on the request in his absence. We agree. The trial court erred by failing to determine whether the jury desired specific testimony, and if so, the nature of that testimony. This error indicated the trial court's failure to exercise discretion in denying the jury's request. We also assume, for reasons stated below, that the trial court ruled on the jury's request in Bryant's absence. Because of the need to protect the rights of the accused, we must assume that Bryant's substantial rights were affected and that he was prejudiced by being absent. Because the trial court's initial error indicated a failure to exercise discretion, and was compounded by prejudice, we now reverse.

■ The trial court has discretion to grant or refuse jury requests. (*People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577.) It is error, however, for a court to deny a jury request for evidence in the mistaken belief that it has no discretion to grant the request. (*People v. Autman* (1974), 58 Ill. 2d 171, 317 N.E.2d 570; *People v. Tansil* (1985), 137 Ill. App. 3d 498, 502, 484 N.E.2d 1169.) Such discretion rests with the court because its experience, and knowledge of a particular case, enables the court to determine whether the materials requested would be helpful to the jury. The discretionary process is facil-

itated where the trial court knows what specific testimony the jury desires. Failure to determine the specific evidence or testimony desired by a jury making a general request has recently been treated as a signal of a trial court's erroneous belief that it lacked discretion to grant the jury's request. *People v. Jackson* (1975), 26 Ill. App. 3d 618, 325 N.E.2d 450. See also *People v. Autman* (1974), 58 Ill. 2d 171, 176, 317 N.E.2d 570; *People v. Tansil* (1985), 137 Ill. App. 3d 498, 503, 484 N.E.2d 1169.

In the instant case, the trial court made no effort to ascertain the specific testimony desired by the jury, and the record contains no indication that the trial court was aware of its discretionary power. With no indications to the contrary, we conclude that the trial court erred by failing properly to exercise its discretion.

The record indicates that the trial court may have known what the jury wanted. In a colloquy immediately prior to its ruling on the jury's request, the court was informed by a sheriff that the jury wished to see police reports, which were not in evidence. Refusing a request for material not in evidence would not have been error. (*People v. King* (1988), 165 Ill. App. 3d 464, 472, 518 N.E.2d 1309.) But we do not review rulings that might have been made. The trial court specifically ruled on the general request for a copy of trial transcripts without further inquiry, and in the absence of indications to the contrary, we hold that this was an erroneous failure to exercise discretion. We further find that the error exacerbated problems raised by the question of whether Bryant was present or represented when the court ruled on the jury's request.

Where the record shows the presence of a defendant when the trial commences, his presence is presumed at all subsequent proceedings unless the record specifically indicates otherwise. (*People v. Harvey* (1981), 95 Ill. App. 3d 992, 999, 420 N.E.2d 645.) In the instant case, the record shows that Bryant and his counsel were present on the morning the case went to the jury, but does not show that they were absent when the trial court ruled on the request; presumably, Bryant was either present or represented when the trial court received and denied the jury's request for transcripts. But during oral arguments, neither the State's nor Bryant's counsel was able to say with certainty whether Bryant was present or represented when the court ruled on the jury's request. The case was remanded for a supplemental hearing on the question, and neither the prosecutor, Bryant's counsel, nor the trial court could recall whether Bryant was present or represented. The lack of recollection by the court and the principal attorneys overcomes any presumption that Bryant or his

counsel was present.

We therefore assume that Bryant was absent when the trial court received and refused the jury's request and address whether the hearing affected Bryant's substantial rights and whether Bryant was prejudiced by a ruling in his absence. It is impossible, however, actually to know whether Bryant's substantial rights were affected, or whether he was prejudiced, because the trial court failed to determine the specific testimony desired by the jury. We must therefore acknowledge the possibility that substantial rights were affected and that Bryant was prejudiced.

■ A defendant has the right to be present at all proceedings affecting his substantial rights. (*People v. Tansil* (1985), 137 Ill. App. 3d 498, 501, 484 N.E.2d 1169; *People v. Martine* (1984), 121 Ill. App. 3d 793, 460 N.E.2d 456, *rev'd on other grounds* (1985), 106 Ill. 2d 429, 478 N.E.2d 262.) Substantial rights are affected in proceedings that bear a substantial relation to the defendant's right to defend himself. (See *People v. Harvey* (1981), 95 Ill. App. 3d 992, 420 N.E.2d 645, citing *Snyder v. Massachusetts* (1933), 291 U.S. 97, 78 L. Ed. 674, 54 S. Ct. 330.) Hearings on procedural matters, or questions of law, would not affect a defendant's substantial rights. *E.g., People v. Martine* (1984), 121 Ill. App. 3d 793, 460 N.E.2d 456, *rev'd on other grounds* (1985), 106 Ill. 2d 429, 478 N.E.2d 262 (offer of proof); *People v. Harvey* (1981), 95 Ill. App. 3d 992, 420 N.E.2d 645 (review of evidence in chambers).

Although *People v. Smith* (1979), 76 Ill. App. 3d 191, 198, 392 N.E.2d 682, stated that a hearing on whether to grant a jury's request for trial transcripts did not affect substantial rights, *People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577, stated such might not always be the case: "[W]e do not say there may not be circumstances when a [hearing on a jury's request for trial testimony] will involve the substantial rights of an accused." (*Pierce,* 56 Ill. 2d at 365.) The determinative factor appears to be the nature of the evidence requested by the jury.

Regardless of whether a court focussed on substantial rights or prejudice, the determinative factor was the effect on the ultimate finding of guilt by the evidence the jury requested. (See *People v. Pierce* (1974), 56 Ill. 2d 361, 365, 308 N.E.2d 577 (substantial rights not affected because the jury had requested unequivocally incriminatory evidence); *People v. Tansil* (1985), 137 Ill. App. 3d 498, 484 N.E.2d 1169 (substantial rights affected because the jury's request for medical opinions concerning the defendant's mental state bore directly on the finding of guilt where a defense of insanity was raised);

*People v. Briggman* (1974), 21 Ill. App. 3d 747, 316 N.E.2d 21 (absent defendant prejudiced where the trial court refused the jury's request to know the direction the defendant had been walking when he was arrested).) In the instant case, because we do not know what, specifically, the jury wanted, it is impossible to determine whether substantial rights were affected, we therefore acknowledge the possibility that they were and proceed from that assumption.

Where a defendant was absent from a proceeding that affected substantial rights, the prosecution must show beyond a reasonable doubt that the defendant was not prejudiced. (See *People v. Briggman* (1974), 21 Ill. App. 3d 747, 752, 316 N.E.2d 21.) In the instant case, because it is impossible to determine whether Bryant was prejudiced, we must acknowledge the reasonable possibility that he was.

It is not unreasonable to assume that the jury sought the testimony to enable them to make their ultimate determination of guilt or innocence. We cannot say, beyond a reasonable doubt, that the evidence the jury would have reviewed would have been either unequivocally incriminatory or exculpatory.

We therefore conclude that, in Bryant's absence, the trial court ruled in a hearing affecting Bryant's substantial rights and that Bryant was prejudiced by his inability to participate. Had the trial court, upon receiving the jury's general request for a copy of the trial testimony, inquired further to determine whether the jury desired specific testimony, and what specific testimony it wanted, determining the implication of substantial rights would have been a matter of determining whether the evidence desired was unequivocally incriminatory.

Further, we cannot say that the trial court's error was made harmless by overwhelming evidence of Bryant's guilt. Although it appears that, given the brief trial and straightforward facts, the jury's deliberation could not have been significantly impaired by a lack of a trial transcript, it is possible that without the transcript, erroneously denied, the jury was unable to review evidence that it regarded as critical to raising a reasonable doubt as to Bryant's guilt. It would be illogical, therefore, to say that any prejudicial error was ameliorated by overwhelming evidence of guilt, when the error may have influenced the finding of guilt.

Bryant raised other issues relating to the sufficiency of proof and prosecutorial misconduct, but because we reverse, we need not address these issues. Finally, Bryant argues that Officer Pirolli's patdown search violated the doctrine of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, because Bryant was not engaged in

any suspicious conduct when he was stopped, and the general description that was broadcast was insufficient for police to form a reasonable suspicion of criminal activity. Bryant relies on *People v. Byrd* (1977), 47 Ill. App. 3d 804, 365 N.E.2d 443, in which the defendant was stopped some 14 blocks from the scene of a robbery, the day following the robbery, on the basis of a general description of the robber's clothing. The Supreme Court held that a stop based on a general description was unreasonable because of the remoteness of time and distance from the crime. In the instant case, however, Bryant was stopped less than two blocks from the scene of the robbery, minutes after the robbery, and matched a description given by the victim immediately after the robbery, detailing both clothing and physical features of the assailant. Given the proximity in both time and distance to the crime, and relatively close match of the description, the police acted with probable cause when they stopped Bryant. Therefore, *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, which applies to stops and searches without probable cause, was not implicated. We therefore hold that the patdown search was properly conducted and the evidence obtained thereby was admissible.

In summary, the trial court's failure to determine whether the jury desired specific testimony showed that the court's refusal of the request for transcripts was made without a proper exercise of discretion. A determination of the specific testimony desired by the jury might have shown that the jury was not entitled to the testimony or allowed the court to determine that the testimony was unnecessary. Further, a determination of the specific testimony would have revealed whether Bryant's presence at the time of the ruling was necessary. Given the facts as they exist, however, it appears that the trial court erred by failing to exercise its discretion, and it is not possible to determine whether the proceeding in which the trial court erred affected Bryant's substantial rights. In the absence of this error, the evidence was sufficient to find Bryant guilty of both offenses beyond a reasonable doubt. Because of the error, however, the convictions are reversed and the case remanded for a new trial.

Reversed and remanded.

BUCKLEY and MANNING, JJ., concur.