THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ARLO PERRY, Defendant-Appellant.
First District (2nd Division) No. 1—86—3419

Opinion filed May 9, 1989.—Rehearing denied June 14, 1989.—Modified opinion filed June 20, 1989.

---

*Justice McNamara participated in the decision of this case prior to his assignment to the sixth division.

536

Randolph N. Stone, Public Defender, of Chicago (Millicent Willis and Alison Edwards, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Joseph G. Howard, and Brian T. Sexton, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN* delivered the opinion of the court:

A jury convicted the defendant, Arlo Perry, of the murder of Tyrone Crosby, and he was sentenced to 34 years' imprisonment. The defendant seeks a new trial because of alleged incompetency of counsel and various trial errors. No issue is made of the sufficiency of the evidence.

Bernard Fisher was a friend of the deceased, Tyrone Crosby, and had known the defendant, whom he called Otto, from seeing him in the neighborhood "just about every day " for more than 10 years. On November 22, 1986, at about 6:30 p.m., Fisher left Crosby's apartment at Champlain Avenue between 49th and 50th Streets in Chicago with Crosby and Tommy Jones. They had shared a pint of wine and a marijuana cigarette. They went to a tavern on 50th Street. Fisher left the tavern to meet his girlfriend Gloria Cox at the home of Joanne Mack at 49th and St. Lawrence. That home was on the west side of St. Lawrence and faced a vacant lot across the street. He and Cox were talking. (Fisher said that he had the conversation with Cox on the front porch of Mack's home. Cox later testified that the conversation took place on the street in front of Mack's home.) Cox saw Crosby come out of a liquor store at 50th and St. Lawrence and yell something to her. She saw Crosby walk towards 59th Street with another black man whom she did not know. She continued to talk to Fisher and then heard what sounded like firecrackers. At the time she was facing Fisher and had her back to the vacant lot. Fisher ran across the street toward the lot, and she ran after him. Fisher ran

---

*Justice Egan participated in the decision of this case prior to his assignment to the sixth division.

across another lot, and again she ran after him. She ran over Crosby's body in the lot. He was lying on his back about three feet from the alley. She did not know the defendant.

Fisher testified that as he was talking to Cox, he saw Crosby and the defendant going through the vacant lot which runs all the way from Champlain to St. Lawrence. He was on St. Lawrence and could see all the way to Champlain. He heard a gunshot come from the vacant lot. He noticed the defendant standing in the lot, but he no longer saw Crosby. The defendant had a gun in his hand and fired three or four rounds while pointing the gun at the ground. The defendant then ran towards Champlain.

Fisher testified to the same circumstances of the discovery of Crosby's body as had Cox. He saw Crosby's body after Cox found it and noticed a hole in the middle of Crosby's forehead. Crosby was still alive and was trying to say something; his eyes were open. The body was at the exact spot at which Fisher had seen the defendant firing the gun. After the police arrived Fisher told them what he had seen. He later searched the area and saw the defendant hiding in another vacant lot looking back towards the officers. Fisher returned to the police and told them where he had seen the defendant. The police searched for the defendant but were unable to find him. After the killing, Fisher did not see the defendant in the neighborhood again. An autopsy of Crosby's body disclosed five through and through bullet wounds.

The police and Fisher then went to a woman's home in a nearby apartment building where the defendant reportedly had been seen entering a basement apartment, but the defendant was not there. That night Detective Guy Habiak interviewed both Fisher and Cox at Area 1 Headquarters. Fisher provided the name Otto Perry as the person who had done the shooting and gave his address at 4943 South Champlain. He also identified the defendant's picture from a group of five photos. After subsequent questioning in the area turned up no information regarding the whereabouts of the defendant, Habiak obtained an arrest warrant. On December 6, 1985, he placed the defendant's photograph in the Daily Bulletin for police officers. The defendant was subsequently arrested on June 19, 1986, in the same neighborhood in which the shooting took place.

The defendant initially claims that his attorney was incompetent, and his argument is advanced in two stages: first, he contends that the attorney must have been incompetent because he had pending certain disciplinary proceedings at the time of trial and, therefore, was so preoccupied with his own problems he could not have devoted his

abilities and energies for the benefit of the defendant to the degree required. (The attorney was subsequently disbarred. (*In re Levin* (1987), 118 Ill. 2d 77, 514 N.E.2d 174).) Second, he points to various alleged errors on the part of the attorney to illustrate his incompetence.

The question of the pending proceedings against the defendant's attorney was first brought up by the judge before the trial began. He informed the defendant's attorney that the defendant should be apprised of the pending proceedings. After conferring with the defendant the attorney returned to open court with the defendant, and the following occurred:

"MR. LEVIN [Defense Attorney]: I have explained to him the situation. He has indicated to me that he wants me to continue in the representation, that he is ready for jury selection at this time.

THE COURT: What you explained to him, without any details, dealt with what?

MR. LEVIN: The disciplinary proceedings pertaining against me and the ramifications of that.

THE COURT: They have nothing to do with your competence as a lawyer?

MR. LEVIN: They have nothing to do with this case.

THE COURT: I mean they do not have anything to do with your competence to represent him?

MR. LEVIN: Correct.

\* \* \*

STATE'S ATTORNEY: Just for purposes of the record, I think the client himself has to indicate in his own words that he understands the problem.

THE COURT: Yes. I think that is probably right. Do you understand, Mr. Perry, I mean?

THE DEFENDANT: Yeah. I understand what he was saying. Yeah. Actions against him, and it does not affect my case in no kind of way.

THE COURT: It does not affect his ability as a lawyer. It is just something completely aside?

THE DEFENDANT: Right.

THE COURT: They have sometimes held, and what I was talking about before is, where a lawyer has something like that pending against him that he could be so occupied and concerned with it that he could not devote his attention to the case at hand. You do not believe that to be the case, is that correct?

THE DEFENDANT: I believe he can represent me."

The defendant now argues that the record does not demonstrate that he was told the nature or extent of the disciplinary proceedings. In effect, the defendant urges us to assume, in the absence of any evidence, that he was not fully apprised of the disciplinary proceedings against his attorney. That is an assumption we are unwilling to make. Contrary to the defendant's views, we do not believe the action taken by the judge was a "sham"; and we do not see anything blameworthy in a judge's efforts to avoid grounds for reversal.

By answering this argument, we do not concede that a trial judge is under an obligation to conduct a hearing whenever he learns that some disciplinary proceedings are pending against a lawyer representing a defendant charged with a crime. But to make our position clear for future cases, we will assume that the defendant was not given more than the bare information that his lawyer had some disciplinary problems.

■ Implicit in the defendant's argument is the premise that the law imposes an obligation on a trial judge to inform a defendant of those disciplinary problems (if, of course, the judge knows of them) and to take a further step to insure that the defendant is fully apprised of those problems. How the judge is to provide that insurance, since disciplinary proceedings are, with rare exception, confidential under Supreme Court Rule 766 (107 Ill. 2d R. 766), is not suggested by the defendant. But to carry the premise to its logical conclusion, if we say such an obligation is imposed on a judge, the same obligation should be imposed on the judge who learns that a lawyer has health, monetary or domestic problems or is under criminal investigation. The lot of the beleaguered criminal trial judge is already not a happy one; and we are confident that no reviewing court would saddle him further with the onerous duty now suggested by the defendant. There may be cases which require intercession by the judge, but such requirement is not automatically triggered by knowledge that disciplinary proceedings are pending. In short, we are not saying that a judge may not or should not inform a defendant of possible disciplinary problems his attorney may have; we are saying that he need not in all cases.

■ Nor do we accept the defendant's argument that the mere pendency of disciplinary proceedings brands an attorney incompetent to defend a person charged with crime. The fact that the supreme court permits lawyers to continue to practice until they are suspended or disbarred should be a clear answer to that argument. The case he cites, *People v. Williams* (1982), 93 Ill. 2d 309, 444 N.E.2d 136, does

not support him. *Williams* involved a defendant sentenced to death whose lawyer also represented two other defendants. Those three were tried before one jury at the same time that another jury was trying a fourth defendant. As can be seen, such a procedure, which was disfavored by the supreme court, would require uncommon mental nimbleness on the part of an attorney in determining what evidence was admissible against what defendant. The supreme court also noted several specific instances of alleged inaction by the defendant's attorney that might demonstrate that he failed to provide effective assistance. Those facts, added to the fact that while defending in a capital case, the defendant's attorney was involved in disciplinary proceedings that eventually led to his disbarment, required a new trial. The attorney admitted that, while the disciplinary proceedings were pending (and while he was representing the defendant), he "did not feel mentally or physically capable of presenting his case" before the disciplinary commission. *In re Weston* (1982), 92 Ill. 2d 431, 436, 442 N.E.2d 236.

The supreme court agreed that ordinarily the record of the attorney's performance at the trial is the only relevant consideration in determining whether his client was afforded the effective assistance of counsel. (*Williams*, 93 Ill. 2d at 315.) In remanding for a new trial, the court made it clear that it was abandoning the established test of competency only because of the "unique circumstances and sequence of events in this capital case, *which will rarely, if ever, be duplicated.*" (Emphasis added.) (*Williams*, 93 Ill. 2d at 325.) There is nothing in *Williams* to support the defendant's position that pending disciplinary proceedings against an attorney, *ipso facto*, render him incompetent to represent a defendant charged with a crime. The question that we must decide, therefore, is: Did the attorney's representation meet the standards imposed by the Illinois Supreme Court in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246?

In *Albanese* our supreme court adopted the standard governing attorney competence as enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. In *Strickland* the Supreme Court laid out the two-prong standard that a defendant claiming ineffective assistance of counsel is required to meet before his conviction must be reversed. First, the defendant must establish that his attorney's representation was actually deficient. Second, the defendant is required to show that defense counsel's flawed representation prejudiced the defense in a manner that produced an unreliable result, or, absent the alleged errors, there exists a reasonable doubt as to the defendant's guilt. The Court noted that the defendant must

satisfy both elements of this test and that in the spirit of judicial economy reviewing courts could initially, as a time-saving measure, consider any prejudice suffered by the defendant before determining whether counsel's performance was deficient.

The defendant alleges that his counsel was ineffective because he failed to do the following: (1) make timely objections and preserve the record for appeal; (2) object to constitutionally impermissible closing argument; (3) present evidence or a theory of defense through cross-examination or closing argument; (4) argue facts and law in support of his motion for a directed verdict; (5) request curative instructions when an objection was sustained and the testimony stricken; and (6) appear for the original trial date October 2, 1986.

Save for the alleged incompetence in permitting improper closing argument, the defendant has not pointed out any part of the record which would support any of the other grounds. In spite of that shortcoming in the defendant's briefs, we have examined the record and conclude that the defendant's allegations of incompetence on those other grounds are baseless. The defendant does not favor us with what "evidence or theory of defense" his attorney should have presented. The defendant's attorney had a difficult case to defend. This was an identification case and a strong one: a witness who had seen the defendant almost every day for 10 years testified that he was looking at the defendant as the defendant stood firing a gun. The attorney did the best he could in cross-examining Fisher and Cox and established some discrepancies between their testimony and what they had told the police. He also argued effectively, advancing the only argument he could, that Fisher was not telling the truth.

Since the defendant has also separately assigned as error the prosecution's statements that the evidence was uncontradicted, we will address that error together with the allegation that the attorney was incompetent for failure to object to those statements. The defendant contends that the prosecution made eight separate remarks that were designed to call the jury's attention to the fact that he did not testify. We have considered the entire arguments of the prosecution and the defense and conclude that the prosecutor's arguments were not improper.

It has been held that the State may properly argue that the testimony of its witnesses is uncontradicted even where the defendant is the only person who could have contradicted it. (*People v. Hopkins* (1972), 52 Ill. 2d 1, 284 N.E.2d 283.) The test for determining whether a defendant's right to remain silent has been violated is whether the reference was intended or calculated to direct the atten-

tion of the jury to the defendant's failure to testify. *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180.

In the opening argument the prosecutor was attempting to outline what evidence was undisputed and what the applicable law was. In the beginning portion of his argument he said, "Mr. Crosby's deceased, and he can't tell us what happened." Later he talked about the instruction covering intent and then added that there was no way of "opening the defendant's mind" to see what he intended. There is nothing improper in those remarks; they would have been appropriate whether the defendant testified or not.

Then he said that Fisher was in a position to observe everything that had happened and that his testimony as to where he was standing was uncontradicted. We point out that Cox could have contradicted that testimony. The defendant was not in a position to do so. The prosecutor said that Fisher's testimony that the area was well-lighted was uncontradicted and noted that the police officers also testified to the good lighting conditions. He also said that the physical evidence, that is the number of bullet wounds in Crosby's body, "can't be contradicted." We find nothing improper in those arguments.

■ The prosecutor's statement that the testimony of Cox and Fisher was uncontradicted gave the defendant's attorney an opportunity to make a strong rebuttal, and he used it. He said that the State's Attorney's statement that the evidence was uncontradicted was not true, that the statement was "false." He pointed out the inconsistencies between the testimony of Fisher and Cox and what Officer Kubiak testified that they had told him. He emphasized that if the area was well-lighted, Cox should have been able to identify the defendant; but she did not because, although she lied, she was not going to lie to the extent that she would identify the defendant. The bulk of his argument was centered on the testimony of Fisher, who he repeatedly said was lying.

A substantial part of the State's closing argument was devoted to a defense of Fisher and Cox; and we construe that part of the prosecutor's argument in which he referred to their testimony as uncontradicted and unrebutted as part of that defense and not an attempt to pinpoint the fact that the defendant did not testify. Further, we believe that the prosecutor's comment, in the context in which it was made, was proper rebuttal invited by the defense attorney's argument that the defendant, unlike Fisher, "did not come into this courtroom and tell a lie." *People v. Dixon*, 91 Ill. 2d at 351.

We do not believe the cases cited by the defendant are applicable; *People v. Wollenberg* (1967), 37 Ill. 2d 480, 229 N.E.2d 490; *People v.*

*Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d 773; and *Williams v. Lane* (7th Cir. 1987), 826 F.2d 654. All of those cases have at least one fact in common which distinguishes them from this one: the defense presented some witnesses.

In *Wollenberg*, the prosecutor recited the names of the State's witnesses and the two witnesses who testified for the defendant and then concluded, "No one else testified. Let's get that straight." (*Wollenberg*, 37 Ill. 2d at 487.) The supreme court determined that the result of those remarks could only have been to direct the jury's attention to the defendant's failure to testify.

In *Conners*, the court noted the similarity between the prosecutor's remarks in that case and those in *Wollenberg*. Upon reviewing the testimony of each State witness, the prosecutor commented:

> "Ladies and gentlemen, the testimony of the people who have testified here is uncontroverted, uncontradicted. You have heard absolutely no one tell you anything else." *Connors*, 82 Ill. App. 3d at 321.

The appellate court pointed out that the defense did call one witness, a police officer, in an attempt to impeach the victim's testimony regarding his description of the assailant. The court concluded that the State's comment could have served to focus the jury's attention on the defendant's failure to testify.

*Williams* involved the charge of rape where the defense of consent was the principal issue, and the State's case consisted almost entirely of the victim's testimony. The alleged rape took place in the defendant's car parked on the shoulder of the freeway, and no one else was present. Thus the only person who could reasonably testify as to consent would have been the defendant. The State's evidence was not unrebutted. Two women testified on behalf of the defendant that they had seen him in a card game with the victim, contrary to her testimony that she had never seen him socially.

When the defendant objected to the prosecutor's comment that the victim told the jury that she had been raped and no one else told them "anything different," the trial court certified that the State had emphasized this remark by pointing to the witness stand. (*Lane*, 826 F.2d at 657.) Shortly after, following more objections by the defendant, the court instructed the prosecutor at a side bar not to make similar arguments. In spite of that instruction, the prosecutor repeated the remarks.

We find no impropriety in the State's remarks and necessarily conclude that the defendant's attorney did not provide ineffective assistance by failing to object to them.

■ The defendant next contends that the totality of the judge's conduct denied him a fair trial. He refers to three specific occurrences but admits that each of them, standing alone, might not constitute reversible error. The first instance occurred during the *voir dire* jury examination at which the following occurred:

"THE COURT: Is there anything about that fact [a friend or relative serving on a suburban police force] that would cause you as a juror in this case to favor the testimony of police officers when they testify simply because they are police officers?

JUROR: It is possible.

THE COURT: This is very unusual. I never knew so many prospective jurors to favor the testimony of police officers. Well, you are excused.

\* \* \*

THE COURT: Is there anything about that fact [friend or relative serving on a suburban police force] that would cause you as a juror in this case to favor the testimony of police officers who may testify in this case?

JUROR: Possibly.

THE COURT: This is a record I think."

That juror also was excused for cause. Before the first juror was excused for cause, three out of the previous seven jurors had made similar expressions of inability to judge the testimony of police officers the same as that of other witnesses. The defendant argues that the judge's remarks "inhibited \*\*\* and prevented the jurors from disclosing their true biases and prejudices." This is a euphemistic way of saying that jurors that were questioned later did not tell the truth. There is no justification for such an accusation. Moreover, it is more fairly arguable that the remarks emphasized the court's view that the jurors should not favor the testimony of police officers. We do not believe that the judge's spontaneous, off-hand remarks prejudiced the defendant in any way.

The cases cited by the defendant, *People v. Britz* (1984), 128 Ill. App. 3d 29, 470 N.E.2d 1059, and *People v. Thomas* (1980), 89 Ill. App. 3d 592, 411 N.E.2d 1076, are not in point. In *Britz* the appellate court criticized the manner in which the trial judge precluded the defendant's attorney from participating in the *voir dire* as well as the failure of the trial court to comport with *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062. Similarly, in *Thomas* the appellate court reversed because of the manner in which the trial judge restricted the right of the defendant's attorney to participate in *voir dire* as well as his refusal to ask proper questions of the jurors.

■ The defendant next asserts that the trial judge abandoned his role as an arbiter and demonstrated a hostile attitude toward his attorney. He points to the judge's question of his attorney, "How much longer do you have to go?" and the question, "Where is the impeaching part?" when the prosecutor objected to certain cross-examination. He also maintains that the court unduly restricted his cross-examination and characterized it as repetitive. We do not believe the questions asked by the court were improper, nor do we believe the defendant's cross-examination was prejudicially restricted. He was permitted to, and did, establish the contradictions between the testimony of Cox and Fisher as to where their conversation took place before the shooting and some inconsistencies between their testimony and the testimony of Officer Habiak as to what they told him.

We do believe, however, certain remarks of the judge would have been better left unsaid. For example, during Fisher's cross-examination concerning what he had told the police, the court volunteered an explanation of how police reports are prepared and what they contained, and when the State's Attorney objected that a question had been asked and answered, the judge said, "He [Fisher] is not sure of the sequence in which he did all this." However, since the defendant's attorney was able to establish his point, we judge that his cross-examination was not restricted and the trial judge's remarks do not indicate a hostile attitude toward him.

The cases cited by the defendant are not apposite. In *People v. Lewerenz* (1962), 24 Ill. 2d 295, 181 N.E.2d 99, the supreme court reversed for several errors, one of which was the conduct of the trial judge, who on 16 occasions during the trial characterized "normal and brief" objections as "speeches," ruled that the "speech [be] stricken" and admonished counsel "not to make any speeches to me before the jury." (*Lewerenz*, 24 Ill. 2d at 300-01.) In *People v. Moriarity* (1966), 33 Ill. 2d 606, 213 N.E.2d 516, the issue was identification. The judge took over the questioning of State witnesses and emphasized the identification. When the prosecutor faltered on direct examination of the complaining witness, the court intervened and asked the critical question. In several instances while defense counsel was cross-examining witnesses, the court of its own volition supplied objections to the questions asked. When the defense attorney objected to the court's participation, he was rebuked by the court "in language from which the jury could not help but know that the court thought little of counsel and of the merits of the defense." (*Moriarity*, 33 Ill. 2d at 613.) When the defendant's wife testified, the court asked the defense attorney, "Have you talked to her about the penalties of lying?" (*Mo-*

*riarity*, 33 Ill. 2d at 613.) When the attorney objected and moved for a mistrial, the court responded: "I am not going to declare a mistrial. I have a right to protect the State and the defendant and it is my duty to do it." (*Moriarity*, 33 Ill. 2d at 614.) Later when the wife testified that her husband had been with her all day on the date of the robbery, the court said to her: "You know what the penalty for lying is, don't you?" (*Moriarity*, 33 Ill. 2d at 614.) The facts of *People v. Santucci* (1962), 24 Ill. 2d 93, 180 N.E.2d 491, are much like *Moriarity*. The trial judge examined all the State witnesses in a manner which emphasized testimony that was detrimental to the defendant. He cross-examined a witness for the defense and established that although she was married to someone else, she had gone out with the defendant on the night in question.

Those cases in no way resemble this one, and we find no conduct on the part of the trial judge that prejudiced the defendant or his attorney in the eyes of the jury.

The last instance which the defendant contends constituted error occurred while the jury was deliberating. The attorneys had been excused and were to be summoned when the verdict was to be returned. That afternoon the jurors apparently sent some questions to the judge, and they were brought into open court. Neither the State, the defendant nor his attorney was present. At that time the judge told the jury the following:

> "Ladies and gentlemen I have your note. The parties are not available at the moment, but I didn't want to delay any longer in responding to this. So we don't have the defendant or any of the lawyers here at the moment, but what I must tell you is this. I cannot answer those questions. The law does not permit me to answer these questions. We do not have a transcript of the trial available. Transcripts are never prepared from day to day. They're only prepared after trial if there is an appeal of a case. So we don't have the transcripts in this case or in any case. If we did, we could give that to you, but the law does not permit me to answer these questions. In other words, and this is why I spoke to you about the format of the trial at the outset, we must rely on the jury's recollection of the evidence they heard in order to resolve all of these questions. So that's the best we can do, and you may return to deliberate."

Later, before the jury returned with a verdict, the defendant, his attorney and the State appeared in open court and the following occurred:

> "THE COURT: About 3 o'clock the jury had a question.

MR. LEVIN [Defense Attorney]: I was advised of the question and what the court's answer was. I have no objections to it.

THE COURT: O.K. Here are the questions. Take a look at it. And I told the Court Reporter to mark in her notes. We didn't have the defendant in the courtroom, and you were not here, and the State stepped out of the courtroom. So I advised the jurors we could not answer the questions; they they had to look into the evidence. The Court Reporter can read it to you if you want it read.

MR. LEVIN: That's fine, judge."

The questions submitted by the jury have not been made part of the record; and the defendant now argues the judge erred because he communicated with the jury out of his presence or of his attorney and because he refused to exercise his discretion under the misconception he had no discretion.

The practice of conducting discussions with jurors out of the presence of the defendant or his attorney has been criticized. (*People v. Bryant* (1988), 176 Ill. App. 3d 809, 531 N.E.2d 849; *People v. Briggman* (1974), 21 Ill. App. 3d 747, 316 N.E.2d 121; but see *People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577 (supreme court held that the defendant's presence could be waived by his attorney during discussions with jurors).) It has also been held to be reversible error for a judge to refuse to answer questions of jurors if the refusal is based on the judge's belief that he has no discretion. *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166.

We first conclude that the defendant has waived both arguments. His attorney was apprised of the questions that had been submitted and the judge's answer; and he said he had no objections to the court's answer. The fact that the jury was apparently ready to return a verdict did not prevent the defendant's attorney from registering an objection and moving that the questions be answered. He had vigorously objected during the trial, even to the point of objecting to the judge's remarks. Further, the post-trial motion made no reference to the judge's actions in response to the jury's question. Therefore, this assignment of error is waived. See *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

Even in the absence of waiver, we conclude that the record does not establish that the judge did not believe he had any discretion or that prejudicial error occurred when the judge met with the jury out of the presence of the defendant or his attorney. The facts of this case strongly resemble those of *People v. Frisby* (1987), 160 Ill. App. 3d

19, 512 N.E.2d 1337. In that case the jury asked if they could read the transcript of the testimony of one of the State's witnesses. The judge responded, "No. None is available." (*Frisby*, 160 Ill. App. 3d at 41.) The judge told the defendant that generally it takes a couple of days for the court reporter to prepare the transcript, and the defendant requested a "72-hour reprieve" which the judge refused. (*Frisby*, 160 Ill. App. 3d at 41.) About 45 minutes later the jury sent out a note that they were deadlocked on both charges. The defendant asked if the witnesses' testimony could be read from the court reporter's notes. The judge said "No," and stated that as a matter of policy, such a procedure was not followed. (*Frisby*, 160 Ill. App. 3d at 41.) The following morning the jury returned a verdict. The appellate court held that the trial court did exercise discretion. It pointed out that the trial court acknowledged and exercised its discretion by indicating to the defendant a reason for declining the jury's request, the problem with obtaining the transcript.

We are at a disadvantage in this case that is not present in any of the other cases that we have read on this issue because we are unable to determine what questions were asked of the judge. Although in light of the absence of those questions, the court's answer is somewhat ambiguous, the import of the language used was an inability to answer the questions because of the absence of the transcript. In any event, it cannot be said that the record clearly reflects that the judge considered he lacked discretion. The responsibility for properly preserving the proceedings below rests with the defendant, and any doubts raised by an incomplete record are resolved against him. (*People v. Hartfield* (1985), 137 Ill. App. 3d 679, 484 N.E.2d 1136.) It is presumed, therefore, that the court acted correctly.

The defendant has cited three cases, including *People v. Jackson* (1975), 26 Ill. App. 3d 618, 325 N.E.2d 450, and *People v. Bryant*, 176 Ill. App. 3d 809, 531 N.E.2d 849. In those two cases the jury made a general request for the trial transcript, and both trial judges refused. And in both cases the appellate court said that the trial judge should have made further inquiry to determine the specific testimony the jury wished to review, and since he did not make such inquiry, his refusal to comply with the general request for a transcript indicated that he did not exercise discretion.

While we express neither agreement nor disagreement with the pronouncements in both cases that the trial judge was required to conduct an inquiry to determine what, if any, specific testimony the jury wished to review, we emphasize that the information sought by the jury in those cases was in the record, unlike this case. We note

also that in *Bryant* the judge answered the jury's request for a transcript by stating, "[T]here's not a transcript available for you. You should rely on your collective memories of the testimony as you heard it." (*Bryant*, 176 Ill. App. 3d at 812.) It would appear that the holding of *Bryant* is contrary to *People v. Frisby*, which we have previously discussed but was not discussed in *Bryant*. There is certain language in *Bryant* to which we take exception. The court said the following:

> "[T]he record contains no indication that the trial court was aware of its discretionary power. With no indications to the contrary, we conclude that the trial court erred by failing properly to exercise its discretion." (*Bryant*, 176 Ill. App. 3d at 813.)

We interpret that language to mean that the appellate court was presuming that the court did not exercise its discretion because the record did not affirmatively show that the court was aware of its discretionary power. In our judgment, such a conclusion is contrary to the rule, previously discussed, that a presumption exists in support of the validity of a judgment. The burden is on the defendant to establish that the judge did not exercise discretion; it is not on the State to show that he did.

As we have noted before, it is generally improper for a trial judge to communicate with the jury outside the presence of the defendant and his attorney. It is, however, well established that a jury verdict will not be set aside because of a communication with the jury out of the defendant's presence unless the defendant demonstrates that he was prejudiced. (*People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 292 N.E.2d 387; *People v. Rogers* (1974), 23 Ill. App. 3d 115, 318 N.E.2d 715.) In this case there is no claim or proof of specific prejudice. His attorney obviously did not believe there was. We note again that the rule of *People ex rel. Walker v. Pate* is contrary to the pronouncement of the appellate court in *Bryant* which assumed that the defendant was prejudiced by being absent.

The defendant also cites *People v. Briggman* (1974), 21 Ill. App. 3d 747, 316 N.E.2d 121. In that case, during the deliberation, the trial judge received a note from the jury which read: "What direction was defendant walking when he was arrested by the policeman as testified to by the policemen?" The judge instructed the bailiff to "[t]ell the jury there is no answer to the question." (*Briggman*, 21 Ill. App. 3d at 750.) In *Briggman*, the appellate court held that a review of the requested testimony would have been crucial to the jury in its deliberation and corroborated the defendant's testimony regarding his ar-

rest. The court concluded that under those circumstances the communication with the jury as to vital testimony affected the substantial rights of the defendant and that the defendant was denied his right to be present at such a proceeding. In other words, unlike this case, the record clearly established prejudice.

■■■ The defendant argues alternatively that the defense counsel's failure to memorialize the jury's questions in the record, or to raise the point in the motion for a new trial, further supports his argument that counsel was incompetent. We repeat that the absence of the questions asked by the jury compounds the difficulty for this court, but it also removes any basis for a holding that counsel was incompetent for failure to object. There is a strong presumption that the defense attorney's conduct fell within the range of reasonable professional assistance, and it is the defendant's burden to overcome that presumption. (*Albanese*, 104 Ill. 2d at 526.) The same reasoning applicable to our holding that the record failed to establish that the judge did not exercise his discretion is applicable here. We are asked to speculate that the defendant's attorney did not have a valid reason for agreeing to the procedure followed by the trial court. We will refrain from doing so. It is just as fair to assume that the questions asked were similar to those asked in *People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577. In *Pierce*, as in this case, the defendant offered no evidence. The jurors asked for the testimony of the prosecuting witness and the arresting officer. *With the agreement of the defendant's attorney*, the judge told the jury, "I cannot instruct further. You must continue with your deliberations." (*Pierce*, 56 Ill. 2d at 363.) The defendant was not present at the time of the discussion of court and counsel. The supreme court said the following (*Pierce*, 56 Ill. 2d at 364-65):

> "Moreover, the defendant cannot be heard to complain of error in the refusal to review the testimony of the victim and the arresting officer. A review of the testimony of both these witnesses discloses only testimony that is unequivocally incriminating and damaging to the defendant, who did not present any defense at trial. The jury had already reached two verdicts at the time of its request for a review of testimony and it is clear that the defendant's attorney acted protectively and in the defendant's interest in agreeing that the testimony of these two witnesses should not be reviewed for the jury. If it could be said on any ground that the trial court should not have refused the jury's request, any consequent error was a species of harmless error, error which favored the defendant and of which he

552

cannot complain. [Citations.] Too, the defendant understandably cannot complain of any deprivation of his right to the assistance of counsel when his attorney's action plainly was in the defendant's interest."

Therefore, we conclude that the defendant has failed to establish any incompetency on the part of his attorney in not making certain that the questions were read into the record.

The defendant has also assigned as error certain other arguments made by the prosecutor. We have examined the specific arguments complained of, and we find no error.

 Last, the defendant contends that the trial court improperly considered as an aggravating factor that the victim died as a result of the defendant's conduct, which is implicit in the offense of murder. We have considered the remarks made by the trial court at the time of sentencing, and we conclude that the defendant has misconstrued them. The court did not consider an improper factor in sentencing the defendant.

For these reasons, the judgment of the circuit court is affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.